| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Mark T. Young (Bar No. 89951)<br>Taylor F. Williams (Bar No. 281331)<br>Betty Luu (Bar No. 305793)<br>Donahoe & Young LLP<br>25152 Springfield Court, Suite 345<br>Valencia, CA 91355<br>Tel: 661-259-9000<br>Fax: 661-554-7088<br>E-mail: myoung@donahoeyoung.com;<br>twilliams@donahoeyoung.com<br><br>☐ *Debtor(s) appearing without an attorney*<br>☒ *Attorney for:* Debtor | |

<table>
<tr><td colspan="2" align="center"><strong>UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION</strong></td></tr>
<tr><td>In re:<br><br>DONALD BROOK BACON</td><td>CASE NO.: 1:17-bk-10187-MB<br>CHAPTER: 13</td></tr>
<tr><td rowspan="2"><br><br><br><br><br>Debtor(s).</td><td align="center"><strong>NOTICE OF OPPORTUNITY TO<br>REQUEST A HEARING ON MOTION</strong><br><br><strong>[LBR 9013-1(o)]</strong></td></tr>
<tr><td>[No hearing unless requested in writing]</td></tr>
</table>

**TO THE U.S. TRUSTEE AND ALL PARTIES ENTITLED TO NOTICE, PLEASE TAKE NOTICE THAT:**

1. Movant(s) Debtor Donald Brook Bacon ,
   filed a motion or application (Motion) entitled Debtor's Motion for Authority to Sell Real Property
   Under LBR 3015-1(p) .

2. Movant(s) is requesting that the court grant the Motion without a hearing as provided for in LBR 9013-1(o), unless a party in interest timely files and serves a written opposition to the Motion and requests a hearing.

3. The Motion is based upon the legal and factual grounds set forth in the Motion. (*Check appropriate box below*):

   ☒ The full Motion is attached to this notice; or

   ☐ The full Motion was filed with the court as docket entry # _____, and a detailed description of the relief sought is attached to this notice.

4. **DEADLINE FOR FILING AND SERVING OPPOSITION PAPERS AND REQUEST FOR A HEARING:** Pursuant to LBR 9013-1(o), any party who opposes the Motion may request a hearing on the Motion. The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                    Page 1          **F 9013-1.2.OPPORTUNITY.HEARING.NOTICE**

a.  If you timely file and serve a written opposition and request for a hearing, movant will file and serve a notice of hearing at least 14 days in advance of the hearing. [LBR 9013-1(o)(4)]

b.  If you fail to comply with this deadline:

(1)  Movant will file a declaration to indicate: (1) the Motion was properly served, (2) the response period elapsed, and (3) no party filed and served a written opposition and request for a hearing within 14 days after the date of service of the notice [LBR 9013-1(o)(3)];

(2)  Movant will lodge an order that the court may use to grant the Motion; and

(3)  The court may treat your failure as a waiver of your right to oppose the Motion and may grant the Motion without further hearing and notice. [LBR 9013-1(h)]

Respectfully submitted,

Date:  06/18/2018

_____
Signature of Movant or attorney for Movant

Betty Luu of Donahoe & Young LLP
Printed name of Movant or attorney for Movant

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                          Page 2                  F 9013-1.2.OPPORTUNITY.HEARING.NOTICE

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Mark T. Young (Bar No. 89951) <br> Taylor F. Williams (Bar No. 281331) <br> Betty Luu (Bar No. 305793) <br> Donahoe & Young LLP <br> 25152 Springfield Court, Suite 345 <br> Valencia, CA 91355 <br> Tel: 661-259-9000 <br> Fax: 661-554-7088 <br> E-mail: myoung@donahoeyoung.com; <br> twilliams@donahoeyoung.com <br><br> ☐ *Individual appearing without attorney* <br> ☒ *Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re: <br><br> DONALD BROOK BACON <br><br><br><br><br><br><br><br> Debtor(s). | CASE NO.: 1:17-bk-10187-MB <br><br> CHAPTER 13 <br><br> **DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY UNDER LBR 3015-1(p)** <br><br> [No Hearing Required] |
|---|---|

Debtor moves this court for an order authorizing the Debtor to sell the real property, described below, pursuant to the terms and conditions described herein.

1. Debtor's Chapter 13 Plan (Plan) was confirmed on: __07/28/2017__.

2. Debtor wishes to sell the real property (Property) located at:
    11201 Gerald Avenue, Granada Hills, California 91344-4252

    The Property is more particularly described in Exhibit "A" attached hereto.

    ☐ Debtor wishes to modify the Plan for early payment of the Plan as described in the *Motion to Modify Plan* submitted by Debtor concurrently with this Motion.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3.  The sale price of the Property is $ 498,000.00 _____. The following are all of the encumbrances of record against the Property:
    a.  Ditech Financial LLC (first mortgage): $287,784.17
    b.  Bank of America (second mortgage): $77,599.97
    c.  Discover Bank (c/o Gordon & Wong Law Group) (judgment lien): $8,195.68
    d.  _____
    e.  _____

    *(Add additional page if necessary)*

4.  After payment of the foregoing encumbrances and all costs of sale:
    ☒ there will remain the approximate sum of $ 82,566.79 _____ ; OR
    ☐ no proceeds will remain.

5.  ☒ (a)  The chapter 13 trustee is hereby authorized to make demand upon escrow for sufficient funds to pay off the Plan with a:
    ☒ 100% dividend to unsecured creditors; OR
    ☐ _____ % divided as indicated in the confirmed plan.

    After escrow's payment of the encumbrances listed above, any remaining funds shall be paid directly to debtor.

    **OR**

    ☐ (b)  The chapter 13 trustee is hereby authorized to make demand upon escrow for the balance remaining after escrow's payment of the encumbrances listed above even though the amount is insufficient to pay off the Plan. The sale is for the fair market value of the Property.

6.  The escrow is being processed by:
    | | |
    |---|---|
    | Escrow company name: | Escrow Technologies |
    | Address: | 9440 Reseda Boulevard, Suite 203 |
    | | Northridge, California 91324 |
    | Telephone: | 818-718-3020 |
    | Facsimile: | 818-718-9550 |
    | Escrow officer: | Paul Frondarina |
    | Escrow number: | 18-00174-PF |

7.  Supporting documents attached to this Motion are:
    a.  Exhibit A – Legal description with street address
    b.  Exhibit B – Escrow instructions and documents
    c.  Exhibit C – Estimated closing statement
    d.  Exhibit D – Schedules I and J of the bankruptcy petition

9.  Debtor agrees to provide to chapter 13 trustee a certified copy of the escrow closing statement within 14 days of the close of escrow as a condition to any approval of this motion.

Date: 6/18/18

_____
Attorney for Debtor

I declare under penalty of perjury that the following is true and correct.

Date: 6/16/2018

_____
Debtor

Date: _____

_____
Joint Debtor

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Property Address**:

11201 Gerald Avenue, Granada Hills, California 91344-4252

**Legal Description**:

LOT 233 IN TRACT NO. 20465, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 540, PAGES 2 TO 13 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON RIGHTS AND SUBSTANCES IN AND UNDER SAID LAND BUT BENEATH A PLANE 500 FEET BELOW THE SURFACE OF SAID LAND, BUT WITHOUT ANY RIGHT OF SURFACE ENTRY, AS RESERVED BY HEALTHY HOMES INC., IN DEED RECORDED MAY 23, 1955 AS INSTRUMENT NO. 215, OF OFFICAL RECORDS.

Assessor's Parcel Number: 2682-017-017

**Exhibit A: Page 1 of 1**




CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA
RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15)

Date Prepared: _05/23/2018_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ _Julio A. Mendoza_ _____ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _____ _11201 Gerald Ave., Granada Hills, CA 91344_ _____ , situated in
   _Granada Hills_ (City), _____ (County), California, _91344_ (Zip Code), Assessor's Parcel No. _2682017017_ ("Property").
   C. **THE PURCHASE PRICE** offered is _Four Hundred Ninety-Eight Thousand_ _____ Dollars $ _498,000.00_
   D. **CLOSE OF ESCROW** shall occur on [ ] _____ (date)(or [X] _14_ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships"
   (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
   Listing Agent _____ (Print Firm Name) is the agent of (check one):
   [ ] the Seller exclusively; or [ ] both the Buyer and Seller.
   Selling Agent _____ _PINNACLE ESTATE PROPERTIES, INC._ _____ (Print Firm Name) (if not the same as the
   Listing Agent) is the agent of (check one): [ ] the Buyer exclusively; or [ ] the Seller exclusively; or [ ] both the Buyer and Seller.
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible
   Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _14,800.00_
   (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
   transfer, [ ] cashier's check, [ ] personal check, [ ] other _____ within 3 business days
   after Acceptance (or _____ );
   OR (2) [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
   to the agent submitting the offer (or to _____ ), made payable to
   _____ . The deposit shall be held uncashed until Acceptance and then deposited
   with Escrow Holder within 3 business days after Acceptance (or _____ ).
   Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . $ _____
   within _____ Days After Acceptance (or _____ ).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
   deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
   RID) at the time the increased deposit is delivered to Escrow Holder.
   C. [X] **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
   obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
   [ ] Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
   (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   This loan will be conventional financing or [ ]FHA, [ ]VA, [ ]Seller financing (C.A.R. Form SFA),
   [ ]assumed financing (C.A.R. Form AFA), [ ]Other _____ . This loan shall be at a fixed
   rate not to exceed _____ % or, [ ]an adjustable rate loan with initial rate not to exceed _____ %.
   Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   (2) [ ] **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   This loan will be conventional financing or [ ] Seller financing (C.A.R. Form SFA), [ ] assumed
   financing (C.A.R. Form AFA), [ ] Other _____ . This loan shall be at a fixed rate not to
   exceed _____ % or, [ ]an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
   the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance
   to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
   Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
   requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
   part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _____

   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . $ _483,200.00_
   to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _498,000.00_

Buyer's Initials ( _JM_ ) ( _____ )

Seller's Initials ( _BB_ ) ( _____ )

© 1991-2015, California Association of REALTORS®, Inc.
© 2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

**Exhibit B: Page 1 of 34**

CALIFORNIA
ASSOCIATION
OF REALTORS®

**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/17)

Property Address: **11201 Gerald Ave. , Granada Hills, CA 91344**_____ ("Property").
**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:**

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

**ACCORDINGLY, YOU ARE ADVISED:**

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant _____ *Julio A. Mendoza* Date _____
Buyer/Tenant _____ Date _____
Seller/Landlord _____ Date 5/23/18
Seller/Landlord _____ Date _____

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

PINNACLE ESTATE PROPERTIES, INC., 18527 DEVONSHIRE ST. NORTHRIDGE CA 91324    Phone: (818)974-7964    Fax: 818-831-7697    Jesus Sanchez
Alex Mendoza    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

**Exhibit B: Page 2 of 34**



**CALIFORNIA ASSOCIATION OF REALTORS®**

### DISCLOSURE REGARDING
### REAL ESTATE AGENCY RELATIONSHIP
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
(a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b)A duty of honest and fair dealing and good faith.
(c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
(a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b)A duty of honest and fair dealing and good faith.
(c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
(a)A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b)Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____*Julio A. Mendoza*_____ Date _**05/23/2018**_

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____*PINNACLE ESTATE PROPERTIES, INC.*_____ BRE Lic. # _____
                        Real Estate Broker (Firm)
By _____ BRE Lic. # _**01428037**_____ Date _**05/23/2018**_
            (Salesperson or Broker-Associate)    *Julio A. Mendoza*

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

_____    _____    _____
Seller/Landlord                                      Seller/Landlord                                                            Date

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

**AD REVISED 12/14 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

PINNACLE ESTATE PROPERTIES, INC., 16527 DEVONSHIRE ST., NORTHRIDGE CA 91324
Alex Mendoza                     Phone: (818)974-7964        Fax: 818-831-7697        Josue Sanchez
                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

**Exhibit B: Page 3 of 34**

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13 As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

2079.14 Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

2079.15 In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17 (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. (c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)    ☐ both the buyer and seller.

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

2079.18 No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
AD REVISED 12/14 (PAGE 2 OF 2)

| Reviewed by_____ Date _____ |
| --- |



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Jorge Sanchez

**Exhibit B: Page 4 of 34**

Property Address: __11201 Gerald Ave. , Granada Hills, CA  91344_____ Date: __May 23, 2018___

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or _____) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or _____) Days After Acceptance.

**J. LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within 3 (or _____) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are **not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**
Within 21 (or _____) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4) ☐ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

OR **B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

**A. ADDENDA:**

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☒ Addendum #___1___ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**6. OTHER TERMS:** __Property is Sold "As Is" ._____
_____
_____
_____

**7. ALLOCATION OF COSTS**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

**(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
_____ prepared by _____

**(2)** ☐ Buyer ☒ Seller shall pay for the following Report __Termite report only  :_____
prepared by _____

**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____

Buyer's Initials ( __JM__ )( _____ )          Seller's Initials ( _____ )( _____ )

RPA-CA REVISED 12/15 (PAGE 2 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Jesse Sanchez

**Exhibit B: Page 5 of 34**

Property Address: <u>11201 Gerald Ave. , Granada Hills, CA  91344</u>                                     Date: <u>May 23, 2018</u>

**B.  GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C.  ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *each to pay their own*

(b) Escrow Holder shall be *sellers choice*

(c) The Parties shall, within 5 (or ____ ) Days After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 13E

(b) Owner's title policy to be issued by *sellers choice*

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D.  OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee

(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee

(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee

(8) ☐ Buyer ☐ Seller shall pay for

(9) ☐ Buyer ☐ Seller shall pay for

(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____, of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____, with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____

Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR ☒ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8.  ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.  NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B.  ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;

(3) The following additional items: _____ ;

(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, _____ , and (ii) are transferred without Seller warranty regardless of value.

**C.  ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

Buyer's Initials ( ____ )( ____ )                                     Seller's Initials ( ____ )( ____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Josue Sanchez

**Exhibit B: Page 6 of 34**

Property Address: **11201 Gerald Ave. , Granada Hills, CA 91344** _____ Date: **May 23, 2018**

**9.  CLOSING AND POSSESSION:**

A.  Buyer intends (or ☒ does not intend) to occupy the Property as Buyer's primary residence.

B.  **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ____ ) ☐ AM/☐ PM on the date of Close Of Escrow; (ii) ☐ no later than ____ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on _____.

C.  **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D.  **Tenant-occupied property:** Property shall be vacant at least 5 (or ____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
OR ☐ Tenant to remain in possession (C.A.R. Form TIP).

E.  At Close Of Escrow, unless Seller assigns to Buyer any assignable warranty rights for items included in the sale, and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F.  At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A.  (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

(2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

(3) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

(4) Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

(5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

(6) In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

(7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

B.  **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; (ii) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C.  **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D.  **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E.  **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

F.  **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) SELLER HAS: 7 (or ____ ) Days After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( __JM__ )( _____ )                    Seller's Initials ( __B__ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Jesus Sanchez

**Exhibit B: Page 7 of 34**

Property Address: **11201 Gerald Ave., Granada Hills, CA  91344**_____ Date: **May 23, 2018**

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days After Acceptance** to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: (i) a general physical inspection; (ii) an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) inspect for lead-based paint and other lead-based paint hazards; (iv) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; (vi) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and (vii) review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( )( )
**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**

Seller's Initials ( )( )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Josue Sanchez

Property Address: **_11201 Gerald Ave. , Granada Hills, CA  91344_**_____ Date: **_May 23, 2018_**

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER HAS: 7 (or ____ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.**

B. (1) **BUYER HAS: 17 (or  2  ) Days After Acceptance, unless otherwise agreed in writing, to: (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.**

(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has 5 (or ____ ) Days After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5) **Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for 17 (or ____ ) Days After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

D. **SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or ____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 **Days Prior** to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or ____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit, (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( _____ )( _____ )          Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Jesus Sanchez

**Exhibit B: Page 9 of 34**

Property Address: *11201 Gerald Ave. , Granada Hills, CA  91344*                    Date: *May 23, 2018*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or [ ____ ] ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**

   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days After Acceptance**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14H, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ____ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( _____ )( _____ )

Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

*Josue Sanchez*

**Exhibit B: Page 10 of 34**

Property Address: **11201 Gerald Ave. , Granada Hills, CA  91344**                                              Date: **May 23, 2018**

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. **AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _JM_ / _____                                    Seller's Initials ____ / _____

**22. DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. **ARBITRATION OF DISPUTES:**

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _JM_ / _____                                    Seller's Initials ____ / _____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _JM_ ) ( _____ )                              Seller's Initials ( ____ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Josue Sanchez

**Exhibit B: Page 11 of 34**

Property Address: **11201 Gerald Ave., Granada Hills, CA 91344** _____ Date: **May 23, 2018**

(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**  Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

**30. DEFINITIONS:** As used in this Agreement:
A. **"Acceptance"** means the time the final or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
I. **"Deliver", "Delivered" or "Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [ ]_____ [ ] AM/ [ ] PM, on _____ (date)).

[ ] One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **05/23/2018**_____ BUYER _____
(Print name) **Julio A. Mendoza**
Date _____ BUYER _____
(Print name) _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials (_____)(_____)

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Josue Sanchez

**Exhibit B: Page 12 of 34**

Property Address: **11201 Gerald Ave., Granada Hills, CA  91344** _____ Date: **May 23, 2018**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _5/23/18_  SELLER _____ _____

(Print name) **BROOK D. BACON** _____

Date _____  SELLER _____ _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)      personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent** whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **PINNACLE ESTATE PROPERTIES, INC.** _____ CalBRE Lic. # _____
By **Julio A. Mendoza** CalBRE Lic. # **01428037** _____ Date _____
By _____ CalBRE Lic. # _____ Date _____
Address **18527 Devonshire St** _____ City **Northridge** _____ State **CA** Zip **91324-1308**
Telephone **(818)974-7964** Fax _____ E-mail **AlexMendozaRE@Gmail.com**
Real Estate Broker (Listing Firm) _Broker in a Trust_ _____ CalBRE Lic. # _____
By _____ CalBRE Lic. # _____ Date _____
By _____ CalBRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.     Buyer Acknowledges that page 10 is part of this Agreement ( _____ )( _____ )
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®                          Buyer's Initials
•525 South Virgil Avenue, Los Angeles, California 90020
**RPA-CA REVISED 12/15 (PAGE 10 OF 10)**

Reviewed by _____
Broker or Designee

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Josue Sanchez

**Exhibit B: Page 13 of 34**



**CALIFORNIA ASSOCIATION OF REALTORS®**

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

No. *1* _____

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____

dated _____ , on property known as _____ **11201 Gerald Ave.** _____
_____ **Granada Hills, CA 91344** _____

in which _____ **Julio A. Mendoza** _____ is referred to as ("Buyer/Tenant")

and _____ is referred to as ("Seller/Landlord").

*1. Buyer to provide proof of funds.*
*2. Buyer is aware property is sold AS IS.*
*3. Buyer is aware property has an NOD. Buyer to cooperate with seller's bankruptcy.*
*4. buyer to verify if garage and patio is permitted.*
*5. Inspection contingency to be removed 2 days after acceptance. Escrow to be open after all contingencies have been removed.*
*6. buyer to return all disclosures back to seller 3 days after they have been delivered to selling agent.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date  *S/23/18*

Buyer/Tenant _____
 *Julio A. Mendoza*

Buyer/Tenant _____

Date  *S/23/18*

Seller/Landlord X _____

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

ADM REVISED 12/15 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

PINNACLE ESTATE PROPERTIES, INC., 18527 DEVONSHIRE ST., NORTHRIDGE CA 91324                     Phone: (818)974-7964    Fax: 818-831-7697    Jesus Sanchez
Alex Mendoza                     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**Exhibit B: Page 14 of 34**



9440 Reseda Blvd., Suite 203
Northridge, CA 91324
Tel: (818) 718-3020 • Fax: (818) 718-9550

## SUPPLEMENTAL ESCROW INSTRUCTIONS

TO: **Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow Officer: **Paul Frondarina**
Escrow Number: **18-00174-PF**

**ESCROW TECHNOLOGIES INC. IS LICENSED AS AN ESCROW AGENT BY THE DEPARTMENT OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, LICENSE # 963-1157.**

| TERMS OF TRANSACTION | | |
|---|---|---|
| Initial/Earnest Deposit to be handed to escrow | $ | 14,800.00 |
| Buyer will deposit prior to the close of escrow | $ | 483,200.00 |
| **TOTAL CONSIDERATION** | **$** | **498,000.00** |

The title is presently vested in  Brook Bacon   (hereinafter known as "Seller), Julio A Mendoza   (hereinafter known as Buyer) will hand Escrow Technologies, Inc. (hereinafter referred to as "Escrow Holder") an initial deposit of $  and, prior to the close of escrow, will deposit the balance of cash down payment and any additional funds VIA WIRE TRANSFER, authorized to use and/or deliver the funds and documents deposited by the parties in this escrow on the scheduled closing date of  June 6, 2018, provided you are in a position to order a Policy of title Insurance through   Equity Title Company, with a liability of $ 498,000.00  covering the following described property in the City of Los Angeles ( Granada Hills Area ) , in the County of Los Angeles State of California, DESCRIBED AS FOLLOWS:

LEGAL DESCRIPTION:

Lot 233 in Tract No. 20465 as Map recorded in Book 540, Pages 2 to 13 inclusive of Maps, in the office of the County Recorder of Los Angeles County, California.
PROPERTY ADDRESS: **11201 Gerald Ave   Los Angeles  ( Granada Hills Area ), CA 91344 , (property address is not verify by Escrow Officer)**

Showing title vested in: Julio A Mendoza

**HOLD OPEN/CUSTODIAL FEE:** Escrow Holder shall be entitled to a "hold open fee" of $50.00 per month beginning with the first month following sixty (60) days past the closing date set forth herein. Said fee shall be paid from funds on deposit herein regardless of the depositor.

BUYERS INITIALS: _____ ʝᵐ            SELLERS INITIALS: _____

SUBJECT TO:
1. General and Special County and City (if any) Taxes for the current fiscal year, not due or delinquent, including any special levies, payments for which are included therein and collected therewith.
2. Lien of Supplemental Taxes, if any, assessed pursuant to the provision of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.
3. Covenants, Conditions and Restrictions, Reservations easements for public utilities, districts, water companies, alleys and streets, rights and rights of way of records, if any; also exceptions of oil, gas, minerals and hydrocarbons, and/or lease, if any, without the right of surface entry.

BUYERS INITIALS ʝᵐ ____            SELLERS INITIALS _____

**Exhibit B: Page 15 of 34**

**Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow No. **18-00174-PF**

---

**INSTRUCTIONS TO ESCROW:**

**CALIFORNIA ASSOCIATION OF REALTORS RESIDENTIAL PURCHASE AGREEMENT (CRPA) AND JOINT ESCROW INSTRUCTIONS:**
We, the undersigned have deposited in escrow an executed copy of the California Association Residential Purchase Agreement and Joint Escrow Instructions dated   May 23, 2018, together with any addendums and/or counter offer(s) thereto. Your duties and responsibilities are limited to those items listed in Paragraph **20** of the Residential Purchase Agreement and Joint Escrow Instructions. **(Items 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17 18A, 19, 20, 26, 29, 30, 31, 32 ( of the paragraph D of section titled Real Estate Brokers on page 10).** Buyer and Seller agree to be bound by the terms and conditions contained therein. These Acknowledgement Escrow Instructions are executed for the sole purpose of enabling Escrow Holder to complete this transaction, and are not intended to amend, modify, supersede or in any way change that certain Agreement entered into by and between the parties hereto and dated prior to these Acknowledgement Escrow Instructions. We will execute additional instructions, documents and forms necessary to complete this transaction. Escrow Holder's general provisions are incorporated into these instructions. In the event there is a conflict these escrow instructions (or amendments hereto) and the Agreement, it is agreed that the Escrow Instructions will control as to the duties of the Escrow Holder.

The following items are restated for clarification purposes only:
  (i)   The parties herein acknowledged that the "Date of Acceptance" occurred on May 23, 2018:
  (ii)  The date of close of escrow to be June 6, 2018

**ALL CASH TRANSACTION:**
This is an "All Cash" transaction and no financing will be secured by Buyer for completing the purchase of subject property.

**BUYER'S VESTING:**
In the event Buyer's Vesting is amended, as referred to in Page one (1) of these instructions, Buyer to notify Escrow Holder in writing of how title is to vest, prior to the close of escrow. Escrow Holder is instructed to change documents accordingly to reflect the amended vesting for use herein without further approval of Seller, even though same may have been previously executed.

**CREDIT FOR BUYER'S CLOSING COSTS:**
At the close of escrow, Escrow Holder is instructed to charge the Seller's account and credit the Buyer's account with the Buyer's **(recurring, non-recurring costs and pre-paid costs),** in amount not to exceed **$10F(2),** as allowed by Lender. Buyer and Seller understand that the credit given shall not exceed the actual total amount of the Buyer's costs, even though same may be less than the maximum. Escrow Holder is instructed to charge the Buyer's account with any closing costs exceeding said maximum.

**FIRE INSURANCE:**
**Buyer** to provide new hazard insurance, as required by Buyer's new Lender, and Escrow Holder is instructed to pay first year's Premium from funds deposited by Buyer, at the close of escrow, unless Escrow Holder is provided with a paid-premium receipt.

**INSURANCE CERTIFICATE:** Buyer understands that there is a Master Fire Insurance Policy on all structures located in the project, including the property described herein, and that the fire insurance premium on same shall be paid by the Homeowner's Association and is included in the monthly assessment. Buyer further understands that said policy DOES NOT and will not cover his personal effects and contents of the unit he is purchasing. Buyer further acknowledges that insurance coverage for his personal effects/contents must be obtained by him outside of this escrow. Escrow holder is instructed to order a new certificate of insurance, at Buyer's expense, from the master policy holder for the benefit of the Buyer and his lien holder.

**BUYER'S WAIVER OF FIRE INSURANCE:**
Escrow Holder is instructed to close escrow without the benefit of Fire Insurance coverage covering subject property. At Buyer's sole option, Buyer may obtain their own insurance coverage outside of escrow, and hereby indemnifies, defends and holds Escrow Technologies and its officers and/or employees harmless as to any loss which Buyer may sustain related to his instructions, including attorneys' fees and/or costs which may be incurred.

**SELLER STATEMENT OF INFORMATION:**
As stated in Paragraph 13 of the purchase agreement, Seller shall within seven (7) days after acceptance
Provide Escrow Holder a completed Statement of Information. Escrow Holder is instructed to immediately forward a same to the title insurance company issuing policy(ies) through this transaction, to conduct a search through the General Index for any item(s) which may affect the subject property and require clearance by Seller prior to the close of escrow.

BUYERS INITIALS ⟍ᵐ            SELLERS INITIALS _____

**Exhibit B: Page 16 of 34**

**SUPPLEMENTAL PROPERTY TAXES:** Any supplemental tax bill issued and disclosed to Escrow Holder prior to closing for a prior tax year or years shall be the responsibilities of the Seller, and you are authorized and instructed to charge account of SELLER accordingly and pay same at closing.

Buyer hereby acknowledges that any property tax bill, including supplemental taxes unknown at the time of close of escrow and/or presented to Escrow Holder after the close of escrow become the responsibility of the new owner, and Buyer hereby indemnifies, defends and hold **Escrow Technologies, Inc.**, its officers and/or employees, and also Seller, real estate agent and brokers' and the title company issuing policy(ies) through this transaction harmless regarding same, including attorneys' fees and/or costs which may be incurred to uphold this indemnity.

**THE FOLLOWING PRORATIONS AND/OR ADJUSTMENTS ARE TO BE MADE AS OF CLOSE OF ESCROW:**
   a.   Real Property Taxes based on upon the tax information and mello-roos and Special Assessments, District Bonds and Assessments, if any, which is supplied by Title Company.

**CLOSING FUNDS:** Pursuant to Federal Regulations and the California Insurance Code, all funds deposited for close of escrow by parties hereto **MUST** be in one of the following forms: 1) Cashier's Check, Teller Check or Certified Check, drawn on a California bank for amounts **DEPOSIT** under $100,000.00 (FUNDS MUST BE DEPOSITED TWO (2) BUSINESS DAYS PRIOR TO CLOSE OF ESCROW); **OR** 2) Direct electronic "wire" transfer into escrow trust account for amounts of $100,000.00 or more (please contact Escrow Holder for wiring instructions). Bank charges for wire transfers shall be paid by the party for whose benefit the wire transfer is de.

**FUNDING THE NEW LOAN:** If lender issues loan funds other than by wire transfer, they may not be immediately available for distribution. This may result in a delay in the close of escrow unless all parties hereto sign a written authorization for the title company instructing that this escrow be closed and disbursement of funds withheld until they become available. All parties herein release and hold harmless Escrow Holder and Title Company from any and all liability and/or responsibility as it relates to any additional interest, costs and/or penalties which may be incurred as a result of same.

**TAX WITHHOLDING:** 1) Under the Foreign Investment in Real Property Tax Act (FIRPTA), IRC Section 1445, every Buyer must, unless an exemption applies, deduct and withhold 15% of the gross sales price from Seller's proceeds and send it to the Internal Revenue Service, if the Seller is a "foreign person" under that statute. 2) In addition, under California Revenue and Taxation Code Section 18662, every Buyer must, unless an exemption applies, deduct and withhold 3 1/3% of the gross sales price from Seller's proceeds and send it to the Franchise Tax Board (FTB): If the subject property is not Seller's principal residence, or if the Seller is a corporation with no permanent place of business in California. 3) Penalties may be imposed on a responsible party for non-compliance with the requirements of these statutes and related regulations. Seller and Buyer agree to execute and deliver any instrument, affidavit, statement, or instruction reasonably necessary to carry out these requirements, and to withholding of tax under those statutes if required. (SELLER'S AFFIDAVIT OF NON-FOREIGN STATUS AND/OR CALIFORNIA RESIDENCY (C.A.R Form AS-14), OR BUYER'S AFFIDAVIT (C.A.R. Form AB-11), IF APPLICABLE, SHALL SATISFY THESE REQUIREMENTS.) 4. **PARTIES ARE ADVISED TO SEEK TAX AND LEGAL COUNSEL REGARDING THE APPLICABILITY AND EFFECT OF THESE TAX WITHHOLDING REQUIREMENTS WITH RESPECT TO THIS TRANSACTION.**

**FACSIMILE SIGNATURES:** In the event any party utilizes "Facsimile" transmitted signed instructions to Escrow Holder, you are to rely on same for all escrow instruction purposes and the closing of escrow as if they bore original signatures. **EXCEPT due to requirements that requires an original signature(s),** (i.e. original Escrow Instructions, Amendments/Instructions/Documents regarding disbursement of funds, prior to or at the close of escrow, all documents for recording at the County Recorder and all notarized documents).

**SPECIAL RECORDING NOTICE:** In the event the documents in this escrow are recorded as a "SPECIAL RECORDING", i.e. subsequent to 8:00 a.m., Buyer and Seller are aware and approve that funds may not or will not be available for disbursement for the payment of liens, proceeds or commissions until the following business day, and that no interest will be earned on such funds. **Escrow Holder, Broker(s) and their Agent(s) are hereby indemnified, held harmless and released from any and all liability and/or responsibility for recording the documents as a "SPECIAL RECORDING" and for any additional interest/penalties to be paid to lender(s) and/or other hardships that may be suffered by any party as a result of said "SPECIAL RECORDING."**

BUYERS INITIALS _____          SELLERS INITIALS _____

**Exhibit B: Page 17 of 34**

Escrow Technologies Inc.

Date: May 29, 2018
Escrow No. 18-00174-PF

**PLEASE NOTE PARAGRAPH 21 OF THE GENERAL PROVISIONS HEREIN, "CANCELLATION OF ESCROW" FOR THE COMPANY'S POLICY REGARDING CANCELLATION OF THIS ESCROW.**

BUYERS INITIAL: _____    SELLERS INITIAL:_____
**OTHER PAGES, INCLUDING PAGES ENTITLED "GENERAL PROVISIONS", AS INDICATED THEREON, ("EXECUTION") EACH PARTY TO THIS ESCROW ACKNOWLEDGES RECEIPT OF SAME AND AGREES THAT SUCH EXECUTION SHALL BE DEEMED HIS/HER FULL ACCEPTANCE AND APPROVAL OF, CONCURRENCE IN, AND AGREEMENT TO BE BOUND BY, ALL OF THE TERMS, PROVISIONS, CONDITIONS, CONTINGENCIES, INSTRUCTIONS AND AGREEMENTS CONTAINED HEREIN, IN THEIR ENTIRETY.**

The foregoing terms, provisions, conditions and instructions are hereby approved and accepted in their entirety and concurred with by me. The undersigned agrees to pay on demand, charges for drawing, recording and notarizing documents, charges of title company, if any, charges of Lender institution, if any, other costs allocated to me in the purchase agreement, if any, and customary escrow fees, necessary to complete this escrow. **I HAVE RECEIVED A COPY OF THESE INSTRUCTIONS.**

_____
Julio A Mendoza

SIGN & RETURN

The foregoing terms, provisions, conditions and instructions are hereby approved and accepted in their entirety and concurred with by me. I will hand you necessary documents called for on my part to cause title to be shown as set forth herein, which you are authorized to deliver when you hold or have caused to be applied to funds set forth herein within the time as herein provided. You are authorized to pay on my behalf, my recording fees, and charges for evidence of title as called for whether or not this escrow is consummated, and other costs allocated to me in the purchase agreement, if any, except those the Buyer agreed to pay. You are hereby authorized to pay bond, assessments, taxes, and any liens of record, including prepayment penalties, if any, to show title as called for. **I HAVE RECEIVED A COPY OF THESE INSTRUCTIONS.**

_____
Brook Bacon

### LAWS AND GOVERNMENT REGULATIONS

#### ALL PARTIES, BY SIGNING BELOW, ACKNOWLEDGE THE FOLLOWING:

1. **1099:** In connection with the Tax reform Act of 1986, Seller to deposit information necessary to produce a 1099 pursuant to and required by the Internal Revenue Service. Seller to complete the 1099 "input form" and deposit same into escrow. Escrow Holder is hereby authorized to rely on the information provided by Seller as being true and correct; all liability and responsibility for the correctness and completeness of the same being solely that of the Seller herein and Escrow Holder is hereby released from any and all liability and/or responsibility in connect with any of the information provided therein. Any costs in connection with the filing of this form are to be borne by Seller. Escrow Holder is authorized to complete the form as necessary, even though the form will have been previously executed.
2. **PCOR:** Pursuant to Revenue and Taxation Code, all deeds and other documents that reflect a change of ownership in real property when presented for recording must be accompanied by a Preliminary Change of Ownership Report (PCOR). If this report is not provided at the time of recording, a penalty of $20.00 will be charged. Escrow Holder to provide Buyer with said form. Buyer understands it is Buyer's responsibility to complete and submit the required information. Escrow Holder to forward said report to the Title Company with deed(s). Should Buyer prefer not to submit the PCOR, a standard Change of Ownership Statement will be mailed to Buyer by the Office of the Assessor after the close of escrow. Failure of Buyer to return the Change in Ownership Statement within 45 days will result in a penalty of 10% of the taxes due, after processing the reassessment caused by a change in ownership, of $100,000, whichever is greater, but not to exceed $2,500.00.
3. **CAL-FIRPTA:** IN ACCORDANCE WITH THE REVENUE AND TAXATION CODE, A BUYER MAY BE REQUIRED TO WITHHOLD AN AMOUNT EQUAL TO 3-1/3 PERCENT OF THE SALES PRICE, IN THE CASE OF A DISPOSITION OF CALIFORNIA REAL PROPERTY INTEREST BY EITHER:

BUYERS INITIALS _____    SELLERS INITIALS _____

**Exhibit B: Page 18 of 34**

**Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

---

A. A Seller who is an individual with a last known street address outside of California or when the disbursement instructions authorize the proceeds be sent to a financial intermediary of the Seller, OR

B. A corporate Seller which has no permanent place of business in California.

For failure to withhold, the Buyer may become subject to a penalty in an amount equal to the greater of ten percent (10.0%) of the amount required to be withheld or five hundred dollars ($500.00). However, notwithstanding any other provision included in the California statutes referenced above, no Buyer will be required to withhold any amount or be subject to penalty for failure to withhold if:

1. The sales price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000.00), OR

2. The Seller executes a written certificate, under penalty of perjury, certifying that the Seller is a resident of California, or if a corporation, has a permanent place of business in California, OR

3. The Seller, who is an individual, executes a written certificate, under the penalty of perjury, that the California real property being conveyed is the Seller's principal residence (as defined in Section 1034 of the Internal Revenue Code.)

The Seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.
The California statutes referenced above include provisions which authorize the Franchise Tax Board, Withhold at Source Unit, P.O. Box 651, Sacramento, CA 95812-0651, (916) 845-4900, FAX (916) 845-4831.

**CAL-FIRPTA:** BUYER IS HEREBY NOTIFIED THAT THE PROVISIONS OF THE CALIFORNIA REVENUE AND TAXATION CODE ARE APPLICABLE TO CERTAIN SALES OF CALIFORNIA REAL ESTATE BY NON-RESIDENT SELLERS. BUYER UNDERSTAND THAT IN NO EVENT WILL ESCROW HOLDER UNDERTAKE TO ADVISE BUYER AND/OR BUYER'S REPRESENTATIVE(S) ON THE POSSIBLE APPLICATION OF THE ABOVE CODE SECTIONS TO THIS SPECIFIC TRANSACTION. UNLESS EXPRESSLY INSTRUCTED BY THE SELLER AND BUYER HEREIN, BUYER UNDERSTANDS THE ESCROW HOLDER WILL NOT ASSIST IN OBTAINING A WAIVER FROM WITHHOLDING FROM THE FRANCHISE TAX BOARD (FTB) IN THE EVENT THAT WITHHOLDING IS OTHERWISE REQUIRED IN THIS TRANSACTION, NOR UNDERTAKE TO WITHHOLDING AND REMITTING FUNDS TO THE FRANCHISE TAX BOARD IN THE EVENT NO WAIVER IS OBTAINED. FOR ADDITIONAL INFORMATION CONCERNING THE WITHHOLDING PROVISION UNDER THE CODE SECTIONS REFERENCED ABOVE, PLEASE CONTACT THE FTB-WITHHOLDING AT SOURCE UNIT (916) 845-4900, P.O. BOX 651, SACRAMENTO, CA 95812-0651 OR TOLL FREE (888) 792-4900 – FAX (916) 845-4831.

**1. FIRPTA:** The Foreign Investment in Real Property Tax Act of 1980 as amended by the Tax Reform Act of 1984 places special requirements for tax reporting and withholding on the parties to a real estate transaction where the Seller is a non-resident, alien, or non-domestic corporation or partnership, or is a domestic corporation or partnership controlled by non-resident corporations or partnerships. The parties to this transaction are seeking an attorney's, accountant's, or other tax specialist's opinion concerning the effect of this Act on this transaction and are not acting on any statements made or omitted by the Escrow Holder.

THE PARTIES IN THIS TRANSACTION HAVE BEEN ADVISED TO SEEK TAX AND LEGAL COUNSEL WITH REGARD TO THE APPLICABILITY of the Foreign Investment in Real Property Tax Act of 1980. THE PARTIES HEREIN HAVE NOT RELIED UPON ANY REPRESENTATION, EITHER EXPRESSED OR IMPLIED BY ESCROW HOLDER AND ESCROW IS HEREBY RELEASED FROM ANY AND ALL LIABILITY WITH REGARD TO SAME.

**2. COLLECTED FUNDS:** Assembly Bill AB512 requires that Title Companies and Escrow Companies be in receipt of COLLECTED funds prior to disbursement of any funds from their accounts. This affects you if funds are coming into this escrow via a new loan, from another escrow company or from Buyer and/or Seller. In the event the funds provided to Escrow Holder or the Title Company are deposited by:

A. Wire transfer, the funds can be disbursed the same day.

B. Cashier's checks or certified checks, the funds can usually be disbursed 3 business days following the date of deposit to the bank, provided that said checks are drawn on a California bank.

C. All other funds may accrue only on or after the day when funds are made available to depositors under Federal Reserve Regulation CC (local checks 3 days, non-local checks 7 days).

If funds are deposited by any means other than bank wire, any disbursement made by this escrow, including payoffs on existing loans and/or Seller proceeds CANNOT BE PAID UNTIL THE ESCROW AND/OR TITLE COMPANY ARE IN RECEIPT OF COLLECTED FUNDS. AS A RESULT, THE TRANSFER OR POSSESSION MAY BE DELAYED.

All parties are aware that escrow is obligated only to inform the parties of these matters and is not responsible for the obtaining or delivery of any statements unless specifically set out within these escrow instructions.

## GENERAL PROVISIONS

1. **CLOSING COSTS:** Charge Buyer with Buyer's usual charges which may include but are not limited to the following: Buyer's customary escrow fee, loan tie in fee, wire and messenger fees, if any, recording of the Grant Deed and Deed of Trust, sub-escrow fee, Lender's Title Policy premium, lender's loan fee and all charges in connection with the new loan, and other costs allocated to Buyer in the purchase agreement, etc., unless otherwise agreed. Charge Seller with Seller's usual charges which may include but are not limited to the following: Seller's customary escrow fee, preparation of Grant Deed, obtaining demand(s), wire and messenger fees, if any, Homeowner's Title Policy premium, transfer tax, sub-escrow fee, and other costs allocated to Seller in the purchase agreement, etc., unless otherwise agreed.

BUYERS INITIALS _____          SELLERS INITIALS _____

**Exhibit B: Page 19 of 34**

**Escrow Technologies Inc.**

Date: May 29, 2018
Escrow No.: 18-00174-PF

PRINCIPALS HEREBY ACKNOWLEDGE AND AGREE THAT IN SOME SITUATIONS, ONE OR MORE PARTIES TO THIS ESCROW MAY RECEIVE A DISCOUNT ON THE ESCROW FEE

2.  **RENTAL PRORATION(S):** If rents are applicable, Escrow Holder is to prorate rent(s) based on rental statement provided by Seller. Escrow Holder is to consider on the basis of such rent statement that Seller will collect all rents which fall due prior to the close of escrow, unless both parties instruct Escrow Holder in writing to the contrary. There shall be no adjustment against Buyer on uncollected rents.

3.  **SIGNATURES:** Parties herein acknowledge that no additional signatures, other than upon the Purchase Agreement, will be required from Real Estate Brokers/Firms and/or Escrow Holder. A Principal's signature on any document or instruction drawn or delivered into the Escrow shall indicate and evidence such Principal's full understanding of and unconditional approval of same, and shall further indicate that they have received a true copy of same.

4.  **CONTINGENCY REMOVAL:** It is understood and agreed between the parties herein that in the event the contingencies referred to in the Purchase Agreement are not met or satisfied within the time frame set forth therein, both Buyer and Seller shall notify Escrow Holder in writing as to the disposition of this Escrow. Buyer and Seller agree that Escrow Holder is hereby relieved of any responsibility and/or liability as to the compliance of the time periods and acceptance of contingencies. Buyer's deposit of final closing funds shall deem Buyer's removal of all contingencies.

5.  **COMMENCEMENT OF ESCROW: Escrow Technologies Inc.'s** duty to act as Escrow Holder shall not commence until Escrow Holder's receipt of Purchase Agreement and Joint Escrow Instructions (and Receipt of Deposit) and any Addendum and/or Counter Offers thereto duly executed by all parties, acknowledged by Escrow Holder. Upon commencement of this escrow no notice, demand, modification, waiver amendment or change of instructions shall be in effect unless given in writing and approved in writing by all parties affected by the same.

6.  **DEPOSIT OF FUNDS:** All funds deposited in this escrow shall be deposited with other escrow funds in the Escrow Trust Account of **Escrow Technologies Inc.** with any state or federal bank, without any liability to the depositing party for interest, and may be transferred into another such Escrow Trust Account at Escrow Holder's option. All disbursements from this escrow shall be made by check of Escrow Holder drawn on said account. All disbursements to be made by check issued jointly to parties as payees unless designated in writing and sent by regular mail to Escrow Holder. Escrow Holder shall not be obligated to identify or to guarantee the signature(s) of (A) any payor on any checks deposited into escrow, or (B) any payee on any checks drawn by Escrow Holder from the Escrow Trust Account. All funds deposited into this escrow are subject to clearance and payment by the bank and savings and loan on which same were drawn; Escrow Holder shall not be responsible for any delay in closing if funds received are not available for immediate withdrawal.

    a.  Company shall not be responsible for any delay in closing this Escrow if funds received by Company are not "good funds" deemed available for immediate withdrawal. Funds deposited by wire transfer or electronic payments are generally available for immediate withdrawal when received by Company's bank. Cashier, certified, or teller's checks may be available for disbursement on the 3rd business day following the business day of deposit; however, other forms of deposit may cause extended delays in closing the Escrow.

    b.  Wiring of funds:

        i.   Should any Principal herein elect to wire funds into the Escrow, it is acknowledged and agreed that such wired funds shall not be considered "good funds" received until such time that Company receives notification from Company's receiving bank that the wired funds are received and available.

        ii.  At the close of the Escrow, should any Principal herein instruct company to wire funds from the Escrow to an entity of Principal's choice, it is acknowledged and agreed that Company will not assure nor be responsible in any way for the length of time the wiring process requires from the point in time of sending the wire to receipt notification of Principal's receiving entity.

        iii. At the close of the Escrow, funds may not be disbursed after confirmation of recording for up to 24-48 hours due to wire transfer cut-off times. Company must be in receipt of funds prior to disbursement.

    c.  In the event Company disburses more money to, or for the benefit of, any Principal herein than they are entitled to receive, said Principal does agree to reimburse and/or repay to Company the amount of said overpayment within five (5) days after demand is made by Company. After *five (5) days*, interest shall be paid to company at the rate of ten percent (10%) per annum. In the event legal proceedings are necessary to collect said money, said Principal agrees to pay all charges, court costs and attorneys' fees incurred thereby. If Escrow has not closed at the time of the subject disbursement, Company shall have the right to offset the amount wrongfully disbursed from the amounts due to the subject Principal at the close of the Escrow.

    d.  Company is authorized to accept and deposit in Escrow, funds and/or documents delivered to Company by a Principal, broker, agent, or other third party, on behalf of any Principal herein. Company shall not be held liable for the sufficiency or correctness as to form, authenticity, manner, execution or validity of any document deposited in this Escrow, and Company's duties shall be limited to the safekeeping and disposition of same pursuant to Company's escrow instructions.

BUYERS INITIALS ___            SELLERS INITIALS _____

**Exhibit B: Page 20 of 34**

**Escrow Technologies Inc.**

Date: May 29, 2018
Escrow No.: 18-00174-PF

---

    e.   Any instruction to Company instructing Company to release any funds held in the Escrow, prior to the close of Escrow, OR instructing Escrow Holder to disburse money to anyone other than those Principals on title in direct proportion to ownership interest, MUST be executed before a Notary Public and returned with signatures in person or by mail. Faxes, emails, or copies will not be accepted.

    f.   Any deposits to this escrow that are $100,000.00 or more must be WIRED into escrow. Cashier's, Teller's, Certified, or any other kind of checks will not be accepted.

7.  **9A REPORT AND CITY REPORTS:** If applicable, Seller shall deposit into escrow for delivery to Buyer the Residential Property Report (9A) in accordance with Ordinance No. 144,942, City of Los Angeles, cost of which is $70.85. In the event the 9A Report is not received by Escrow Holder in such a time as to allow a timely closing of this escrow, Escrow Holder is nevertheless hereby authorized and instructed to close this escrow without receipt of same, inasmuch as Seller states, and Buyer acknowledges and accepts that Seller has no knowledge of any pending special assessments as maybe issued against subject property by the city of Los Angeles (for items such as public improvements, weed and/or debris abatement, etc.). In the event any such assessments are disclosed on said 9A report, upon Escrow Holder's receipt of same, for which Seller is responsible, Seller hereby accepts said responsibility. Seller and Buyer hereby release and relieve **Escrow Technologies Inc.**, Listing and Selling brokerages and their respective agents from any and all responsibility and/or liability in connection with the foregoing.

8.  **DOCUMENTS AND INSTRUMENTS:** Escrow Holder shall not be held liable or responsible (A) for the sufficiency or correctness as to form or validity of any document or instrument deposited into this escrow; or (B) with regard to the manner of execution of same or the identity of any person executing same; or (C) for determining the authority or rights of any person executing same. THE SIGNATURE OF EACH PARTY EXECUTING ANY DOCUMENTS OR INSTRUMENTS DEPOSITED INTO ESCROW SHALL BE DEEMED EVIDENCE OF THAT PARTY'S REVIEW, UNDERSTANDING, ACCEPTANCE AND APPROVAL OF ALL CONDITIONS AND PROVISIONS CONTAINED THEREIN.

9.  **FORGERIES:** <u>Company shall not be liable or responsible for any loss that may occur by reason of forgeries or false representations made by or involving third parties or Principals to this Escrow. Company will not verify the authenticity of any signatures in this Escrow, and Company shall not be liable or responsible for making any determination as to the legal competency of any Principals executing escrow documents.</u>

10. **SHORT PAY:** If a Principal in this Escrow should negotiate a "short pay" demand with a lender holding an encumbrance against the subject property, Company shall not in any way be liable for or concerned with any legal or tax consequences that the Principal may incur as a result of that short pay. Company is to pay the lender's beneficiary's demand as presented to Company.

11. **LANGUAGE:** This Escrow will be processed in the ENGLISH language. Should any Principal elect to use a language translator to assist them in understanding the escrow process, or any documentation that is a part of this Escrow, that language translator will be selected and provided by the Principal in need of such assistance. Company will not provide language translation services and will not be liable or responsible for the correctness of any language translator's interpretation of the escrow process or of any documentation that is a part of this Escrow.

12. **PERSONAL PROPERTY TAX:** Escrow Holder is not responsible and shall not be held liable for personal property tax which may be assessed against any former owner of subject real property or for corporation or license transaction, or facts within Escrow Holder's knowledge, even though same concern the subject real property, provided said facts do not prevent compliance with Escrow Instructions.

13. **LEGAL PROCESS:** Escrow Holder shall have the right and authority to withhold any action and require the written consent of all necessary parties, if, in the judgment of Escrow Holder, such action calls for or appears to require the use of discretionary judgment by Escrow Holder or is not within the ordinary scope of Escrow Holder's activity. If written conflicting demands by the parties hereto are made or notice is served upon Escrow Holder or legal action is taken in connection with the escrow, Escrow Holder shall not be required to take any action or determine the right of the parties, but shall withhold and stop all further proceedings without liability therefore, and may file suit in Interpleader or for declaratory relief. If an Interpleader action is initiated. Escrow Holder shall collect reasonable cancellation fees prior to depositing the escrowed funds with the court, as set forth in California Civil Code Section 1057.3. All the parties to this escrow hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify Escrow Holder, it's employees and agents and to hold Escrow Holder, it's employees and agents harmless from and against all litigation and Interpleader costs, damages, judgments, attorney's fees, expenses, obligations, liabilities or expenses which may arise during the performance of this escrow. Or subsequent thereto, directly or indirectly.

14. **SUB-ESCROW AGENT:** Escrow agent is authorized to deposit funds or documents with duly authorized sub-agent or title company subject to escrow agent's order at or prior to close of escrow, in the event deposits shall be necessary or convenient for consummation of escrow. The parties hereto will pay all fees incurred by Escrow Holder in connection therewith.

15. **ESCROW DISCLOSURES:** Escrow Holder shall not be obligated to make any physical examination of any real or personal property described in any document deposited into this escrow, and the parties acknowledge that Escrow Holder makes no representation whatsoever regarding said property. Any knowledge that Escrow Holder may have of matters affecting the property does not create any liability or duty in addition to the responsibility of Escrow Holder specifically set forth in these instructions, provided any such matter do not prevent compliance with these instructions. Escrow Holder shall be under no obligation for failure to inform the parties to this escrow regarding any

BUYERS INITIALS _____              SELLERS INITIALS _____

**Exhibit B: Page 21 of 34**

**Escrow Technologies Inc.**

Date: May 29, 2018
Escrow No.: 18-00174-PF

---

sale, Loan exchange, or other transactions or facts within the knowledge of Escrow Holder concerning the subject property provided same does not prevent Escrow Holder's compliance with these instructions.

16. **MAINTENANCE OF DOCUMENTS:** The parties to these escrow instructions authorize you to destroy these instructions and all other instructions and records in this escrow at any time after five (5) years from close of escrow.

17. **STOCKHOLDERS:** Notice is hereby given that stockholders of this company are California Real Estate licensees.

18. **RECORDATION:** Parties authorize a recordation of instruments delivered to escrow if necessary or proper in the issuance of the policy of title insurance called for to effect the closing of the escrow in connection with escrow funds, instructions or instrument received in the escrow, such may be delivered to, or deposited with any title company for the purpose of complying with the terms and conditions of the escrow.

19. **SPECIAL RECORDINGS:** Recordation of documents normally occurs at 8:00 AM on the day of close of escrow. Should parties desire a "Special" (later) recording, Buyer and Seller and/or Agent(s) to this transaction shall have verbally instructed Escrow Holder to authorize such a "Special" recording. The parties are aware that a "Special" recording may result in Seller's proceeds not being available to Seller on the date of recording due to delays in Escrow Holder receiving the recording confirmation, balance of funds from title, settlement figures, etc. Should the parties instruct Escrow Holder to authorize a "Special" recording, Escrow Holder shall be held harmless and indemnified against any loss, liability or responsibility for so doing.

20. **TIME:** In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed, nevertheless, to complete the same at any time thereafter as soon as the conditions (except as to time) have been complied with, unless any of us shall have made written demand upon you for the return of money or documents deposited by him.

21. **CANCELLATION OF ESCROW:** The California Residential Purchase Agreement and Joint Escrow Instructions – Paragraph 14-G is hereby struck from the Agreement and this provision shall supersede Paragraph 14-G in its place.

    **a.**  Any Principal Requesting Company to cancel this escrow shall file a notice of demand to cancel (a Cancellation Demand") with Company in writing. Upon receipt of a Cancellation Demand, Company may suspend performance of its escrow duties and issue written cancellation instructions, by mail, to all Principals ("Cancellation Notice"). Upon Company's receipt of original executed cancellation instructions from all Principals, Company shall disburse funds and documents pursuant thereto and this escrow shall be cancelled.

    **b.**  If, after a Cancellation Notice has been sent, Cancellation Instructions executed by all Principals are not received by Company, Company is authorized to comply with the Cancellation Demand, cancel the Escrow and distribute any money held in Escrow, less any and charges as provided herein, pursuant to the Cancellation Demand. Notwithstanding anything to the contrary provided herein, Company shall not distribute any money held in the Escrow if written objection is received from the Principal not making the Cancellation Demand within fifteen (15) calendar days of the mailing of a Cancellation Notice. In the event written objection is received in a timely manner, Company may refuse to take any further action in the escrow and may file an action in Interpleader.

    **c.**  If this Escrow does not close by the Close of Escrow date set forth herein, either Principal may file with the Company a written demand ("Demand to Perform") that the other Principal perform. Company shall immediately mail the Demand to Perform to the other Principal, and if the Escrow is not closed within 5 days of the mailing of the Demand to Perform, a Cancellation Demand may be sent to Company, which Demand may be complied with at the discretion of Company. Should the Escrow be cancelled pursuant to this paragraph, Company shall distribute any monies held in the Escrow, less any fees and charges as provided herein, pursuant to the Cancellation Demand. If the company complies with the preceding process, each party shall be deemed to have released company from any and all claims of liability related to the disbursal of the deposit. Company, at its discretion, may nevertheless require mutual cancellation instructions. A party may be subject to a civil penalty of up to a $1,000.00 for refusal to sign Cancellations Instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code Section 1057.3).

    **d.**  If there is no written activity by a Principal for any twelve-month period after the Close of Escrow date set forth above, Company may, at its option, terminate its agency relationship with Principals and cancel this Escrow, returning all documents, monies or other items hold to the respective parties who deposited those documents, monies or other items in the Escrow, less any fees and charges as provided herein. In the event of any cancellation of the Escrow pursuant to this paragraph, Company may return all documents or funds delivered to Company by any lender, less any fees due Company.

    **e.**  CANCELLATION COSTS- In the event of cancellation of this Escrow, Principals hereto expressly agree to pay Company a reasonable escrow fee as forth in the Fee Schedule in effect at the time which may, from time to time, be modified as compensation for services performed, together with all costs including any third-party costs. Cancellation costs and fees shall be paid pursuant to Cancellation Instructions. Only upon payment to Company of Company's fees and costs, and third-party charges is Company obligated to disburse funds and documents to the respective Principals and deem this Escrow cancelled, and until such time Company holds a lien upon the right, title, and interest of each of the Principals' escrow documents and funds. If there are insufficient funds, then the Principals who owe such funds shall deposit sufficient funds with the Company to pay any and all fees and costs which they may be responsible for under these instructions.

BUYERS INITIALS                 SELLERS INITIALS _____

**Exhibit B: Page 22 of 34**

Escrow Technologies Inc.

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

---

f. Any fees due the Company shall be taken from funds held in Escrow. **IT IS NOT THE RESPONSIBILITY OR ROLE OF COMPANY TO DETERMINE WHICH PRINCIPAL IS AT FAULT OR CAUSED ESCROW TO CANCEL. ANY DISBUTE OVER WHO IS THE RESPONSIBLE PARTY FOR THE CANCELLATION AND ANY SUBSEQUENT FEES MUST BE DETERMINED OUTSIDE OF ESCROW.**

22. **EXTRAORDINARY CHARGES:** It is understood that the fees agreed to be paid you your services are for ordinary and usual services only, and should there be any extraordinary or unusual services rendered, the undersigned agree to pay reasonable compensation for such extraordinary or unusual services, together with any costs and expenses which may be incurred by Escrow Holder in connection with the same. You are hereby given a lien upon all documents, monies and securities deposited in this escrow until you have been so compensated or reimbursed. It is understood that in the event this escrow is cancelled, you will receive compensation for such services as you have rendered in connection with this escrow.

23. **CLOSING:** If this Escrow is not in a position to close upon the closing date set forth herein, and demand is not made by any principal to cancel, Company is to continue processing to close this Escrow when all the conditions of this Escrow have been complied with. But, if on the closing date, or any date thereafter, written demand is made by any principal to cancel this Escrow, Company is to act in accordance with the paragraph in reference to "CANCELLATION" above.

24. **USURY:** Escrow agent is not to be concerned with any question of usury in any loan involved in the processing of this escrow.

25. **PRACTICE OF LAW:** Escrow Holder is not authorized to practice law or give financial advice.

26. **RESIGNATION:** Company may, at Company's sole option, and without liability to Principals or third parties, give written notice to Principals and resign from this Escrow. Company shall be entitled to all costs and charges incurred by Company prior to resignation. The balance of any funds, property, and or documents shall be returned to the parties who deposited same or forwarded to escrow agents as mutually designated in writing by Principals.

27. **THIRD PARTIES:** Escrow Holder is indemnified by parties against third party claims for fees and expenses by Escrow Holder, but not limited to, attorney fees and costs, where Escrow Holder has acted in good faith and with reasonable care and prudence.

28. **COUNTERPARTS:** Escrow instructions may be executed in counterparts each of which shall be deemed an original regardless of the date of its execution and delivery. All counterparts together shall constitute one and the same documents called for on his part to cause title to be shown as herein set forth, which you are authorized to deliver when you hold or have caused to be applied funds set forth with the time limits as provided. Each party authorized you to pay your escrow charges and recording fee, and further authorized you to pay bonds, assessments, taxes and any liens of record to show title as called for.

29. **COLLECTION OF MONIES: Escrow Technologies Inc.** may collect any other monies due **Escrow Technologies Inc.**, which may be due from parties herein in any other matter involving one or both of these Principals.

30. **DISBURSEMENTS:** Escrow Holder is further authorized to pay bills as submitted into Escrow in accordance with the terms of the Purchase Agreement and any encumbrances of record, including any prepayment penalty. In the event you disburse more money to or for the benefit of any party that they are entitled to receive, said receiving party hereby agrees to reimburse and/or repay to Escrow Holder the amount of overpayment within five (5) days after demand is made on said parties in writing. Interest shall thereafter accrue and be paid to Escrow Holder at the rate of 12% per annum. In case said party refuses or neglects to pay said money and interest to Escrow Holder, and it is necessary to resort to any legal proceedings to collect said money, the defendant agrees to pay all charges, court costs and attorney's fees.

31. **HOLD OPEN/CUSTODIAL ACCOUNTING FEE:** Company may withdraw and pay to itself a $50.00 monthly custodial accounting fee from any Principal's funds held in this Escrow (1) that are not claimed, disbursed, or cashed within sixty (60) days after closing or cancellation, or (2) any time Principals hold this Escrow in suspense for a period of more than sixty (60) days due to a dispute between the Principals or due to Principals' failure to execute a mutual escrow instruction concerning funds disbursement.

32. **STALEDATED CHECK(S):** Escrow Holder may charge a $10.00 per month fee, up to 6 months, for any uncashed, stale dated check(s).

# END OF ESCROW INSTRUCTIONS

Julio A Mendoza

SIGN & RETURN

BUYERS INITIALS _____          SELLERS INITIALS _____

**Exhibit B: Page 23 of 34**

Escrow Technologies Inc.

_____

Brook Bacon



9440 Reseda Blvd., Suite 203
Northridge, CA 91324
Tel: (818) 718-3020 • Fax: (818) 718-9550

## SUPPLEMENTAL ESCROW INSTRUCTIONS

TO: **Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow Officer: **Paul Frondarina**
Escrow Number: **18-00174-PF**

**ESCROW TECHNOLOGIES INC. IS LICENSED AS AN ESCROW AGENT BY THE DEPARTMENT OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, LICENSE # 963-1157.**

| TERMS OF TRANSACTION | | |
|---|---|---|
| Initial/Earnest Deposit to be handed to escrow | $ | 14,800.00 |
| Buyer will deposit prior to the close of escrow | $ | 483,200.00 |
| **TOTAL CONSIDERATION** | **$** | **498,000.00** |

The title is presently vested in  Brook Bacon   (hereinafter known as "Seller),  Julio A Mendoza   (hereinafter known as Buyer) will hand Julio A Technologies, Inc. (hereinafter referred to as "Escrow Holder") an initial deposit of $  and, prior to the close of escrow, will deposit the balance of cash down payment and any additional funds VIA WIRE TRANSFER, authorized to use and/or deliver the funds and documents deposited by the parties in this escrow on the scheduled closing date of   June 6, 2018, provided you are in a position to order a Policy of title Insurance through  Equity Title Company, with a liability of $ 498,000.00 covering the following described property in the City of Los Angeles  ( Granada Hills Area ) , in the County of Los Angeles State of California, DESCRIBED AS FOLLOWS:

LEGAL DESCRIPTION:

Lot 233 in Tract No. 20465 as Map recorded in Book 540, Pages 2 to 13 inclusive of Maps, in the office of the County Recorder of Los Angeles County, California.
PROPERTY ADDRESS: **11201 Gerald Ave   Los Angeles ( Granada Hills Area ), CA 91344 , (property address is not verify by Escrow Officer)**

Showing title vested in: Julio A Mendoza

**HOLD OPEN/CUSTODIAL FEE:** Escrow Holder shall be entitled to a "hold open fee" of $50.00 per month beginning with the first month following sixty (60) days past the closing date set forth herein. Said fee shall be paid from funds on deposit herein regardless of the depositor.

**BUYERS INITIALS:** _____         **SELLERS INITIALS:** _____

SUBJECT TO:
1. General and Special County and City (if any) Taxes for the current fiscal year, not due or delinquent, including any special levies, payments for which are included therein and collected therewith.
2. Lien of Supplemental Taxes, if any, assessed pursuant to the provision of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.
3. Covenants, Conditions and Restrictions, Reservations easements for public utilities, districts, water companies, alleys and streets, rights and rights of way of records, if any; also exceptions of oil, gas, minerals and hydrocarbons, and/or lease, if any, without the right of surface entry.

BUYERS INITIALS _____         SELLERS INITIALS _____

**Exhibit B: Page 25 of 34**

Escrow Technologies Inc.

Date: **May 29, 2018**
Escrow No. **18-00174-PF**

---

**INSTRUCTIONS TO ESCROW:**

**CALIFORNIA ASSOCIATION OF REALTORS RESIDENTIAL PURCHASE AGREEMENT (CRPA) AND JOINT ESCROW INSTRUCTIONS:**

We, the undersigned have deposited in escrow an executed copy of the California Association Residential Purchase Agreement and Joint Escrow Instructions dated   May 23, 2018, together with any addendums and/or counter offer(s) thereto. Your duties and responsibilities are limited to those items listed in Paragraph **20** of the Residential Purchase Agreement and Joint Escrow Instructions. **(Items 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17 18A, 19, 20, 26, 29, 30, 31, 32 ( of the paragraph D of section titled Real Estate Brokers on page 10).**   Buyer and Seller agree to be bound by the terms and conditions contained therein.  These Acknowledgement Escrow Instructions are executed for the sole purpose of enabling Escrow Holder to complete this transaction, and are not intended to amend, modify, supersede or in any way change that certain Agreement entered into by and between the parties hereto and dated prior to these Acknowledgement Escrow Instructions.  We will execute additional instructions, documents and forms necessary to complete this transaction.  Escrow Holder's general provisions are incorporated into these instructions.  In the event there is a conflict these escrow instructions (or amendments hereto) and the Agreement, it is agreed that the Escrow Instructions will control as to the duties of the Escrow Holder.

The following items are restated for clarification purposes only:
  (i)   The parties herein acknowledged that the "Date of Acceptance" occurred on May 23, 2018:
  (ii)  The date of close of escrow to be June 6, 2018

**ALL CASH TRANSACTION:**
This is an "All Cash" transaction and no financing will be secured by Buyer for completing the purchase of subject property.

**BUYER'S VESTING:**
In the event Buyer's Vesting is amended, as referred to in Page one (1) of these instructions,  Buyer to notify Escrow Holder in writing of how title is to vest, prior to the close of escrow.  Escrow Holder is instructed to change documents accordingly to reflect the amended vesting for use herein without further approval of Seller, even though same may have been previously executed.

**CREDIT FOR BUYER'S CLOSING COSTS:**
At the close of escrow, Escrow Holder is instructed to charge the Seller's account and credit the Buyer's account with the Buyer's **(recurring, non-recurring costs and pre-paid costs),** in amount not to exceed **$10F(2),** as allowed by Lender.  Buyer and Seller understand that the credit given shall not exceed the actual total amount of the Buyer's costs, even though same may be less than the maximum. Escrow Holder is instructed to charge the Buyer's account with any closing costs exceeding said maximum.

**FIRE INSURANCE:**
**Buyer** to provide new hazard insurance, as required by Buyer's new Lender, and Escrow Holder is instructed to pay first year's Premium from funds deposited by Buyer, at the close of escrow, unless Escrow Holder is provided with a paid-premium receipt.

**INSURANCE CERTIFICATE:**  Buyer understands that there is a Master Fire Insurance Policy on all structures located in the project, including the property described herein, and that the fire insurance premium on same shall be paid by the Homeowner's Association and is included in the monthly assessment.  Buyer further understands that said policy DOES NOT and will not cover his personal effects and contents of the unit he is purchasing.  Buyer further acknowledges that insurance coverage for his personal effects/contents must be obtained by him outside of this escrow.  Escrow holder is instructed to order a new certificate of insurance, at Buyer's expense, from the master policy holder for the benefit of the Buyer and his lien holder.

**BUYER'S WAIVER OF FIRE INSURANCE:**
Escrow Holder is instructed to close escrow without the benefit of Fire Insurance coverage covering subject property.  At Buyer's sole option, Buyer may obtain their own insurance coverage outside of escrow, and hereby indemnifies, defends and holds Escrow Technologies and its officers and/or employees harmless as to any loss which Buyer may sustain related to his instructions, including attorneys' fees and/or costs which may be incurred.

**SELLER STATEMENT OF INFORMATION:**
As stated in Paragraph 13 of the purchase agreement, Seller shall within seven (7) days after acceptance
Provide Escrow Holder a completed Statement of Information.  Escrow Holder is instructed to immediately forward a same to the title insurance company issuing policy(ies) through this transaction, to conduct a search through the General Index for any item(s) which may affect the subject property and require clearance by Seller prior to the close of escrow.

BUYERS INITIALS _____          SELLERS INITIALS _____

**Exhibit B: Page 26 of 34**

Escrow Technologies Inc.

Date: **May 29, 2018**
Escrow No. 18-00174-PF

---

**SUPPLEMENTAL PROPERTY TAXES:** Any supplemental tax bill issued and disclosed to Escrow Holder prior to closing for a prior tax year or years shall be the responsibilities of the Seller, and you are authorized and instructed to charge account of SELLER accordingly and pay same at closing.

Buyer hereby acknowledges that any property tax bill, including supplemental taxes unknown at the time of close of escrow and/or presented to Escrow Holder after the close of escrow become the responsibility of the new owner, and Buyer hereby indemnifies, defends and hold **Escrow Technologies, Inc.,** its officers and/or employees, and also Seller, real estate agent and brokers' and the title company issuing policy(ies) through this transaction harmless regarding same, including attorneys' fees and/or costs which may be incurred to uphold this indemnity.

**THE FOLLOWING PRORATIONS AND/OR ADJUSTMENTS ARE TO BE MADE AS OF CLOSE OF ESCROW:**
    a.   Real Property Taxes based on upon the tax information and mello-roos and Special Assessments, District Bonds and Assessments, if any, which is supplied by Title Company.

**CLOSING FUNDS:** Pursuant to Federal Regulations and the California Insurance Code, all funds deposited for close of escrow by parties hereto **MUST** be in one of the following forms: 1) Cashier's Check, Teller Check or Certified Check, drawn on a California bank for amounts **DEPOSIT** under $100,000.00 (FUNDS MUST BE DEPOSITED TWO (2) BUSINESS DAYS PRIOR TO CLOSE OF ESCROW); **OR** 2) Direct electronic "wire" transfer into escrow trust account for amounts of $100,000.00 or more (please contact Escrow Holder for wiring instructions). Bank charges for wire transfers shall be paid by the party for whose benefit the wire transfer is de.

**FUNDING THE NEW LOAN:** If lender issues loan funds other than by wire transfer, they may not be immediately available for distribution. This may result in a delay in the close of escrow unless all parties hereto sign a written authorization for the title company instructing that this escrow be closed and disbursement of funds withheld until they become available. All parties herein release and hold harmless Escrow Holder and Title Company from any and all liability and/or responsibility as it relates to any additional interest, costs and/or penalties which may be incurred as a result of same.

**TAX WITHHOLDING:** 1) Under the Foreign Investment in Real Property Tax Act (FIRPTA), IRC Section 1445, every Buyer must, unless an exemption applies, deduct and withhold 15% of the gross sales price from Seller's proceeds and send it to the Internal Revenue Service, if the Seller is a "foreign person" under that statute. 2) In addition, under California Revenue and Taxation Code Section 18662, every Buyer must, unless an exemption applies, deduct and withhold 3 1/3% of the gross sales price from Seller's proceeds and send it to the Franchise Tax Board (FTB): If the subject property is not Seller's principal residence, or if the Seller is a corporation with no permanent place of business in California. 3) Penalties may be imposed on a responsible party for non-compliance with the requirements of these statutes and related regulations. Seller and Buyer agree to execute and deliver any instrument, affidavit, statement, or instruction reasonably necessary to carry out these requirements, and to withholding of tax under those statutes if required. (SELLER'S AFFIDAVIT OF NON-FOREIGN STATUS AND/OR CALIFORNIA RESIDENCY (C.A.R Form AS-14), OR BUYER'S AFFIDAVIT (C.A.R. Form AB-11), IF APPLICABLE, SHALL SATISFY THESE REQUIREMENTS.) **4. PARTIES ARE ADVISED TO SEEK TAX AND LEGAL COUNSEL REGARDING THE APPLICABILITY AND EFFECT OF THESE TAX WITHHOLDING REQUIREMENTS WITH RESPECT TO THIS TRANSACTION.**

**FACSIMILE SIGNATURES:** In the event any party utilizes "Facsimile" transmitted signed instructions to Escrow Holder, you are to rely on same for all escrow instruction purposes and the closing of escrow as if they bore original signatures. **EXCEPT due to requirements that requires an original signature(s),** (i.e. original Escrow Instructions, Amendments/Instructions/Documents regarding disbursement of funds, prior to or at the close of escrow, all documents for recording at the County Recorder and all notarized documents).

**SPECIAL RECORDING NOTICE:** In the event the documents in this escrow are recorded as a "SPECIAL RECORDING", i.e. subsequent to 8:00 a.m., Buyer and Seller are aware and approve that funds may not or will not be available for disbursement for the payment of liens, proceeds or commissions until the following business day, and that no interest will be earned on such funds. **Escrow Holder, Broker(s) and their Agent(s) are hereby indemnified, held harmless and release from any and all liability and/or responsibility for recording the documents as a "SPECIAL RECORDING" and for any additional interest/penalties to be paid to lender(s) and/or other hardships that may be suffered by any party as a result of said "SPECIAL RECORDING."**

BUYERS INITIALS \_\_\_\_\_           SELLERS INITIALS \_\_\_\_\_

**Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow No. **18-00174-PF**

**PLEASE NOTE PARAGRAPH 21 OF THE GENERAL PROVISIONS HEREIN, "CANCELLATION OF ESCROW" FOR THE COMPANY'S POLICY REGARDING CANCELLATION OF THIS ESCROW.**

BUYERS INITIAL: _____    SELLERS INITIAL: _____
**OTHER PAGES, INCLUDING PAGES ENTITLED "GENERAL PROVISIONS", AS INDICATED THEREON, ("EXECUTION") EACH PARTY TO THIS ESCROW ACKNOWLEDGES RECEIPT OF SAME AND AGREES THAT SUCH EXECUTION SHALL BE DEEMED HIS/HER FULL ACCEPTANCE AND APPROVAL OF, CONCURRENCE IN, AND AGREEMENT TO BE BOUND BY, ALL OF THE TERMS, PROVISIONS, CONDITIONS, CONTINGENCIES, INSTRUCTIONS AND AGREEMENTS CONTAINED HEREIN, IN THEIR ENTIRETY.**

The foregoing terms, provisions, conditions and instructions are hereby approved and accepted in their entirety and concurred with by me. The undersigned agrees to pay on demand, charges for drawing, recording and notarizing documents, charges of title company, if any, charges of Lender institution, if any, other costs allocated to me in the purchase agreement, if any, and customary escrow fees, necessary to complete this escrow. **I HAVE RECEIVED A COPY OF THESE INSTRUCTIONS.**

_____
Julio A Mendoza

The foregoing terms, provisions, conditions and instructions are hereby approved and accepted in their entirety and concurred with by me. I will hand you necessary documents called for on my part to cause title to be shown as set forth herein, which you are authorized to deliver when you hold or have caused to be applied to funds set forth herein within the time as herein provided. You are authorized to pay on my behalf, my recording fees, and charges for evidence of title as called for whether or not this escrow is consummated, and other costs allocated to me in the purchase agreement, if any, except those the Buyer agreed to pay. You are hereby authorized to pay bond, assessments, taxes, and any liens of record, including prepayment penalties, if any, to show title as called for. **I HAVE RECEIVED A COPY OF THESE INSTRUCTIONS.**

_____
Brook Bacon

SIGN & RETURN

### LAWS AND GOVERNMENT REGULATIONS

#### ALL PARTIES, BY SIGNING BELOW, ACKNOWLEDGE THE FOLLOWING:

1. **1099**: In connection with the Tax reform Act of 1986, Seller to deposit information necessary to produce a 1099 pursuant to and required by the Internal Revenue Service. Seller to complete the 1099 "input form" and deposit same into escrow. Escrow Holder is hereby authorized to rely on the information provided by Seller as being true and correct; all liability and responsibility for the correctness and completeness of the same being solely that of the Seller herein and Escrow Holder is hereby released from any and all liability and/or responsibility in connect with any of the information provided therein. Any costs in connection with the filing of this form are to be borne by Seller. Escrow Holder is authorized to complete the form as necessary, even though the form will have been previously executed.
2. **PCOR**: Pursuant to Revenue and Taxation Code, all deeds and other documents that reflect a change of ownership in real property when presented for recording must be accompanied by a Preliminary Change of Ownership Report (PCOR). If this report is not provided at the time of recording, a penalty of $20.00 will be charged. Escrow Holder to provide Buyer with said form. Buyer understands it is Buyer's responsibility to complete and submit the required information. Escrow Holder to forward said report to the Title Company with deed(s). Should Buyer prefer not to submit the PCOR, a standard Change of Ownership Statement will be mailed to Buyer by the Office of the Assessor after the close of escrow. Failure of Buyer to return the Change in Ownership Statement within 45 days will result in a penalty of 10% of the taxes due, after processing the reassessment caused by a change in ownership, of $100,000, whichever is greater, but not to exceed $2,500.00.
3. **CAL-FIRPTA**: IN ACCORDANCE WITH THE REVENUE AND TAXATION CODE, A BUYER MAY BE REQUIRED TO WITHHOLD AN AMOUNT EQUAL TO 3-1/3 PERCENT OF THE SALES PRICE, IN THE CASE OF A DISPOSITION OF CALIFORNIA REAL PROPERTY INTEREST BY EITHER:

BUYERS INITIALS _____          SELLERS INITIALS _____

*Page 4*

**Exhibit B: Page 28 of 34**

**Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

---

A.  A Seller who is an individual with a last known street address outside of California or when the disbursement instructions authorize the proceeds be sent to a financial intermediary of the Seller, OR

B.  A corporate Seller which has no permanent place of business in California.

For failure to withhold, the Buyer may become subject to a penalty in an amount equal to the greater of ten percent (10.0%) of the amount required to be withheld or five hundred dollars ($500.00). However, notwithstanding any other provision included in the California statutes referenced above, no Buyer will be required to withhold any amount or be subject to penalty for failure to withhold if:

1.  The sales price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000.00), OR

2.  The Seller executes a written certificate, under penalty of perjury, certifying that the Seller is a resident of California, or if a corporation, has a permanent place of business in California, OR

3.  The Seller, who is an individual, executes a written certificate, under the penalty of perjury, that the California real property being conveyed is the Seller's principal residence (as defined in Section 1034 of the Internal Revenue Code.)

The Seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.
The California statutes referenced above include provisions which authorize the Franchise Tax Board, Withhold at Source Unit, P.O. Box 651, Sacramento, CA 95812-0651, (916) 845-4900, FAX (916) 845-4831.

**CAL-FIRPTA:** BUYER IS HEREBY NOTIFIED THAT THE PROVISIONS OF THE CALIFORNIA REVENUE AND TAXATION CODE ARE APPLICABLE TO CERTAIN SALES OF CALIFORNIA REAL ESTATE BY NON-RESIDENT SELLERS. BUYER UNDERSTAND THAT IN NO EVENT WILL ESCROW HOLDER UNDERTAKE TO ADVISE BUYER AND/OR BUYER'S REPRESENTATIVE(S) ON THE POSSIBLE APPLICATION OF THE ABOVE CODE SECTIONS TO THIS SPECIFIC TRANSACTION. UNLESS EXPRESSLY INSTRUCTED BY THE SELLER AND BUYER HEREIN, BUYER UNDERSTANDS THE ESCROW HOLDER WILL NOT ASSIST IN OBTAINING A WAIVER FROM WITHHOLDING FROM THE FRANCHISE TAX BOARD (FTB) IN THE EVENT THAT WITHHOLDING IS OTHERWISE REQUIRED IN THIS TRANSACTION, NOR UNDERTAKE TO WITHHOLDING AND REMITTING FUNDS TO THE FRANCHISE TAX BOARD IN THE EVENT NO WAIVER IS OBTAINED. FOR ADDITIONAL INFORMATION CONCERNING THE WITHHOLDING PROVISION UNDER THE CODE SECTIONS REFERENCED ABOVE, PLEASE CONTACT THE FTB-WITHHOLDING AT SOURCE UNIT (916) 845-4900, P.O. BOX 651, SACRAMENTO, CA 95812-0651 OR TOLL FREE (888) 792-4900 – FAX (916) 845-4831.

**1.   FIRPTA:** The Foreign Investment in Real Property Tax Act of 1980 as amended by the Tax Reform Act of 1984 places special requirements for tax reporting and withholding on the parties to a real estate transaction where the Seller is a non-resident, alien, or non-domestic corporation or partnership, or is a domestic corporation or partnership controlled by non-resident corporations or partnerships. The parties to this transaction are seeking an attorney's, accountant's, or other tax specialist's opinion concerning the effect of this Act on this transaction and are not acting on any statements made or omitted by the Escrow Holder.

THE PARTIES IN THIS TRANSACTION HAVE BEEN ADVISED TO SEEK TAX AND LEGAL COUNSEL WITH REGARD TO THE APPLICABILITY of the Foreign Investment in Real Property Tax Act of 1980. THE PARTIES HEREIN HAVE NOT RELIED UPON ANY REPRESENTATION, EITHER EXPRESSED OR IMPLIED BY ESCROW HOLDER AND ESCROW IS HEREBY RELEASED FROM ANY AND ALL LIABILITY WITH REGARD TO SAME.

**2.   COLLECTED FUNDS:** Assembly Bill AB512 requires that Title Companies and Escrow Companies be in receipt of COLLECTED funds prior to disbursement of any funds from their accounts. This affects you if funds are coming into this escrow via a new loan, from another escrow company or from Buyer and/or Seller. In the event the funds provided to Escrow Holder or the Title Company are deposited by:

A.  Wire transfer, the funds can be disbursed the same day.

B.  Cashier's checks or certified checks, the funds can usually be disbursed 3 business days following the date of deposit to the bank, provided that said checks are drawn on a California bank.

C.  All other funds may accrue only on or after the day when funds are made available to depositors under Federal Reserve Regulation CC (local checks 3 days, non-local checks 7 days).

If funds are deposited by any means other than bank wire, any disbursement made by this escrow, including payoffs on existing loans and/or Seller proceeds CANNOT BE PAID UNTIL THE ESCROW AND/OR TITLE COMPANY ARE IN RECEIPT OF COLLECTED FUNDS. AS A RESULT, THE TRANSFER OR POSSESSION MAY BE DELAYED.

All parties are aware that escrow is obligated only to inform the parties of these matters and is not responsible for the obtaining or delivery of any statements unless specifically set out within these escrow instructions.

### GENERAL PROVISIONS

**1.   CLOSING COSTS:** Charge Buyer with Buyer's usual charges which may include but are not limited to the following: Buyer's customary escrow fee, loan tie in fee, wire and messenger fees, if any, recording of the Grant Deed and Deed of Trust, sub-escrow fee, Lender's Title Policy premium, lender's loan fee and all charges in connection with the new loan, and other costs allocated to Buyer in the purchase agreement, etc., unless otherwise agreed. Charge Seller with Seller's usual charges which may include but are not limited to the following: Seller's customary escrow fee, preparation of Grant Deed, obtaining demand(s), wire and messenger fees, if any, Homeowner's Title Policy premium, transfer tax, sub-escrow fee, and other costs allocated to Seller in the purchase agreement, etc., unless otherwise agreed.

BUYERS INITIALS _____        SELLERS INITIALS _____

**Exhibit B: Page 29 of 34**

**Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

---

PRINCIPALS HEREBY ACKNOWLEDGE AND AGREE THAT IN SOME SITUATIONS, ONE OR MORE PARTIES TO THIS ESCROW MAY RECEIVE A DISCOUNT ON THE ESCROW FEE

2. **RENTAL PRORATION(S):** If rents are applicable, Escrow Holder is to prorate rent(s) based on rental statement provided by Seller. Escrow Holder is to consider on the basis of such rent statement that Seller will collect all rents which fall due prior to the close of escrow, unless both parties instruct Escrow Holder in writing to the contrary. There shall be no adjustment against Buyer on uncollected rents.

3. **SIGNATURES:** Parties herein acknowledge that no additional signatures, other than upon the Purchase Agreement, will be required from Real Estate Brokers/Firms and/or Escrow Holder. A Principal's signature on any document or instruction drawn or delivered into the Escrow shall indicate and evidence such Principal's full understanding of and unconditional approval of same, and shall further indicate that they have received a true copy of same.

4. **CONTINGENCY REMOVAL:** It is understood and agreed between the parties herein that in the event the contingencies referred to in the Purchase Agreement are not met or satisfied within the time frame set forth therein, both Buyer and Seller shall notify Escrow Holder in writing as to the disposition of this Escrow. Buyer and Seller agree that Escrow Holder is hereby relieved of any responsibility and/or liability as to the compliance of the time periods and acceptance of contingencies. Buyer's deposit of final closing funds shall deem Buyer's removal of all contingencies.

5. **COMMENCEMENT OF ESCROW: Escrow Technologies Inc.'s** duty to act as Escrow Holder shall not commence until Escrow Holder's receipt of Purchase Agreement and Joint Escrow Instructions (and Receipt of Deposit) and any Addendum and/or Counter Offers thereto duly executed by all parties, acknowledged by Escrow Holder. Upon commencement of this escrow no notice, demand, modification, waiver amendment or change of instructions shall be in effect unless given in writing and approved in writing by all parties affected by the same.

6. **DEPOSIT OF FUNDS:** All funds deposited in this escrow shall be deposited with other escrow funds in the Escrow Trust Account of **Escrow Technologies Inc.** with any state or federal bank, without any liability to the depositing party for interest, and may be transferred into another such Escrow Trust Account at Escrow Holder's option. All disbursements from this escrow shall be made by check of Escrow Holder drawn on said account. All disbursements to be made by check issued jointly to parties as payees unless designated in writing and sent by regular mail to Escrow Holder. Escrow Holder shall not be obligated to identify or to guarantee the signature(s) of (A) any payor on any checks deposited into escrow, of (B) any payee on any checks drawn by Escrow Holder from the Escrow Trust Account. All funds deposited into this escrow are subject to clearance and payment by the bank and savings and loan on which same were drawn; Escrow Holder shall not be responsible for any delay in closing if funds received are not available for immediate withdrawal.

   **a.** Company shall not be responsible for any delay in closing this Escrow if funds received by Company are not "good funds" deemed available for immediate withdrawal. Funds deposited by wire transfer or electronic payments are generally available for immediate withdrawal when received by Company's bank. Cashier, certified, or teller's checks may be available for disbursement on the 3rd business day following the business day of deposit; however, other forms of deposit may cause extended delays in closing the Escrow.

   **b.** Wiring of funds:

      **i.** Should any Principal herein elect to wire funds into the Escrow, it is acknowledged and agreed that such wired funds shall not be considered "good funds" received until such time that Company receives notification from Company's receiving bank that the wired funds are received and available.

      **ii.** At the close of the Escrow, should any Principal herein instruct company to wire funds from the Escrow to an entity of Principal's choice, it is acknowledged and agreed that Company will not assure nor be responsible in any way for the length of time the wiring process requires from the point in time of sending the wire to receipt notification of Principal's receiving entity.

      **iii.** At the close of the Escrow, funds may not be disbursed after confirmation of recording for up to 24-48 hours due to wire transfer cut-off times. Company must be in receipt of funds prior to disbursement.

   **c.** In the event Company disburses more money to, or for the benefit of, any Principal herein than they are entitled to receive, said Principal does agree to reimburse and/or repay to Company the amount of said overpayment within five (5) days after demand is made by Company. After *five (5) days*, interest shall be paid to company at the rate of ten percent (10%) per annum. In the event legal proceedings are necessary to collect said money, said Principal agrees to pay all charges, court costs and attorneys' fees incurred thereby. If Escrow has not closed at the time of the subject disbursement, Company shall have the right to offset the amount wrongfully disbursed from the amounts due to the subject Principal at the close of the Escrow.

   **d.** Company is authorized to accept and deposit in Escrow, funds and/or documents delivered to Company by a Principal, broker, agent, or other third party, on behalf of any Principal herein. Company shall not be held liable for the sufficiency or correctness as to form, authenticity, manner, execution or validity of any document deposited in this Escrow, and Company's duties shall be limited to the safekeeping and disposition of same pursuant to Company's escrow instructions.

BUYERS INITIALS _____                    SELLERS INITIALS _____

*Page 6*

**Exhibit B: Page 30 of 34**

Escrow Technologies Inc.

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

---

e.  Any instruction to Company instructing Company to release any funds held in the Escrow, prior to the close of Escrow, OR instructing Escrow Holder to disburse money to anyone other than those Principals on title in direct proportion to ownership interest, MUST be executed before a Notary Public and returned with signatures in person or by mail. Faxes, emails, or copies will not be accepted.

f.  Any deposits to this escrow that are $100,000.00 or more must be WIRED into escrow. Cashier's, Teller's, Certified, or any other kind of checks will not be accepted.

7.  **9A REPORT AND CITY REPORTS:** If applicable, Seller shall deposit into escrow for delivery to Buyer the Residential Property Report (9A) in accordance with Ordinance No. 144,942, City of Los Angeles, cost of which is $70.85. In the event the 9A Report is not received by Escrow Holder in such a time as to allow a timely closing of this escrow, Escrow Holder is nevertheless hereby authorized and instructed to close this escrow without receipt of same, inasmuch as Seller states, and Buyer acknowledges and accepts that Seller has no knowledge of any pending special assessments as maybe issued against subject property by the city of Los Angeles (for items such as public improvements, weed and/or debris abatement, etc.). In the event any such assessments are disclosed on said 9A report, upon Escrow Holder's receipt of same, for which Seller is responsible, Seller hereby accepts said responsibility. Seller and Buyer hereby release and relieve **Escrow Technologies Inc.**, Listing and Selling brokerages and their respective agents from any and all responsibility and/or liability in connection with the foregoing.

8.  **DOCUMENTS AND INSTRUMENTS:** Escrow Holder shall not be held liable or responsible (A) for the sufficiency or correctness as to form or validity of any document or instrument deposited into this escrow; or (B) with regard to the manner of execution of same or the identity of any person executing same; or (C) for determining the authority or rights of any person executing same. THE SIGNATURE OF EACH PARTY EXECUTING ANY DOCUMENTS OR INSTRUMENTS DEPOSITED INTO ESCROW SHALL BE DEEMED EVIDENCE OF THAT PARTY'S REVIEW, UNDERSTANDING, ACCEPTANCE AND APPROVAL OF ALL CONDITIONS AND PROVISIONS CONTAINED THEREIN.

9.  **FORGERIES:** Company shall not be liable or responsible for any loss that may occur by reason of forgeries or false representations made by or involving third parties or Principals to this Escrow. Company will not verify the authenticity of any signatures in this Escrow, and Company shall not be liable or responsible for making any determination as to the legal competency of any Principals executing escrow documents.

10. **SHORT PAY:** If a Principal in this Escrow should negotiate a "short pay" demand with a lender holding an encumbrance against the subject property, Company shall not in any way be liable for or concerned with any legal or tax consequences that the Principal may incur as a result of that short pay. Company is to pay the lender's beneficiary's demand as presented to Company.

11. **LANGUAGE:** This Escrow will be processed in the ENGLISH language. Should any Principal elect to use a language translator to assist them in understanding the escrow process, or any documentation that is a part of this Escrow, that language translator will be selected and provided by the Principal in need of such assistance. Company will not provide language translation services and will not be liable or responsible for the correctness of any language translator's interpretation of the escrow process or of any documentation that is a part of this Escrow.

12. **PERSONAL PROPERTY TAX:** Escrow Holder is not responsible and shall not be held liable for personal property tax which may be assessed against any former owner of subject real property or for corporation or license transaction, or facts within Escrow Holder's knowledge, even though same concern the subject real property, provided said facts do not prevent compliance with Escrow Instructions.

13. **LEGAL PROCESS:** Escrow Holder shall have the right and authority to withhold any action and require the written consent of all necessary parties, if, in the judgment of Escrow Holder, such action calls for or appears to require the use of discretionary judgment by Escrow Holder or is not within the ordinary scope of Escrow Holder's activity. If written conflicting demands by the parties hereto are made or notice is served upon Escrow Holder or legal action is taken in connection with the escrow, Escrow Holder shall not be required to take any action or determine the right of the parties, but shall withhold and stop all further proceedings without liability therefore, and may file suit in Interpleader or for declaratory relief. If an Interpleader action is initiated, Escrow Holder shall collect reasonable cancellation fees prior to depositing the escrowed funds with the court, as set forth in California Civil Code Section 1057.3. All the parties to this escrow hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify Escrow Holder, it's employees and agents and to hold Escrow Holder, it's employees and agents harmless from and against all litigation and Interpleader costs, damages, judgments, attorney's fees, expenses, obligations, liabilities or expenses which may arise during the performance of this escrow. Or subsequent thereto, directly or indirectly.

14. **SUB-ESCROW AGENT:** Escrow agent is authorized to deposit funds or documents with duly authorized sub-agent or title company subject to escrow agent's order at or prior to close of escrow, in the event deposits shall be necessary or convenient for consummation of escrow. The parties hereto will pay all fees incurred by Escrow Holder in connection therewith.

15. **ESCROW DISCLOSURES:** Escrow Holder shall not be obligated to make any physical examination of any real or personal property described in any document deposited into this escrow, and the parties acknowledge that Escrow Holder makes no representation whatsoever regarding said property. Any knowledge that Escrow Holder may have of matters affecting the property does not create any liability or duty in addition to the responsibility of Escrow Holder specifically set forth in these instructions, provided any such matter do not prevent compliance with these instructions. Escrow Holder shall be under no obligation for failure to inform the parties to this escrow regarding any

BUYERS INITIALS _____          SELLERS INITIALS 

**Exhibit B: Page 31 of 34**

**Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

sale, Loan exchange, or other transactions or facts within the knowledge of Escrow Holder concerning the subject property provided same does not prevent Escrow Holder's compliance with these instructions.

16. **MAINTENANCE OF DOCUMENTS:** The parties to these escrow instructions authorize you to destroy these instructions and all other instructions and records in this escrow at any time after five (5) years from close of escrow.

17. **STOCKHOLDERS:** Notice is hereby given that stockholders of this company are California Real Estate licensees.

18. **RECORDATION:** Parties authorize a recordation of instruments delivered to escrow if necessary or proper in the issuance of the policy of title insurance called for to effect the closing of the escrow in connection with escrow funds, instructions or instrument received in the escrow, such may be delivered to, or deposited with any title company for the purpose of complying with the terms and conditions of the escrow.

19. **SPECIAL RECORDINGS:** Recordation of documents normally occurs at 8:00 AM on the day of close of escrow. Should parties desire a "Special" (later) recording, Buyer and Seller and/or Agent(s) to this transaction shall have verbally instructed Escrow Holder to authorize such a "Special" recording. The parties are aware that a "Special" recording may result in Seller's proceeds not being available to Seller on the date of recording due to delays in Escrow Holder receiving the recording confirmation, balance of funds from title, settlement figures, etc. Should the parties instruct Escrow Holder to authorize a "Special" recording, Escrow Holder shall be held harmless and indemnified against any loss, liability or responsibility for so doing.

20. **TIME:** In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed, nevertheless, to complete the same at any time thereafter as soon as the conditions (except as to time) have been complied with, unless any of us shall have made written demand upon you for the return of money or documents deposited by him.

21. **CANCELLATION OF ESCROW:** The California Residential Purchase Agreement and Joint Escrow Instructions – Paragraph 14-G is hereby struck from the Agreement and this provision shall supersede Paragraph 14-G in its place.

    **a.** Any Principal Requesting Company to cancel this escrow shall file a notice of demand to cancel (a Cancellation Demand") with Company in writing. Upon receipt of a Cancellation Demand, Company may suspend performance of its escrow duties and issue written cancellation instructions, by mail, to all Principals ("Cancellation Notice"). Upon Company's receipt of original executed cancellation instructions from all Principals, Company shall disburse funds and documents pursuant thereto and this escrow shall be cancelled.

    **b.** If, after a Cancellation Notice has been sent, Cancellation Instructions executed by all Principals are not received by Company, Company is authorized to comply with the Cancellation Demand, cancel the Escrow and distribute any money held in Escrow, less any and charges as provided herein, pursuant to the Cancellation Demand. Notwithstanding anything to the contrary provided herein, Company shall not distribute any money held in the Escrow if written objection is received from the Principal not making the Cancellation Demand within fifteen (15) calendar days of the mailing of a Cancellation Notice. In the event written objection is received in a timely manner, Company may refuse to take any further action in the escrow and may file an action in Interpleader.

    **c.** If this Escrow does not close by the Close of Escrow date set forth herein, either Principal may file with the Company a written demand ("Demand to Perform") that the other Principal perform. Company shall immediately mail the Demand to Perform to the other Principal, and if the Escrow is not closed within 5 days of the mailing of the Demand to Perform, a Cancellation Demand may be sent to Company, which Demand may be complied with at the discretion of Company. Should the Escrow be cancelled pursuant to this paragraph, Company shall distribute any monies held in the Escrow, less any fees and charges as provided herein, pursuant to the Cancellation Demand. If the company complies with the preceding process, each party shall be deemed to have released company from any and all claims of liability related to the disbursal of the deposit. Company, at its discretion, may nevertheless require mutual cancellation instructions. A party may be subject to a civil penalty of up to a $1,000.00 for refusal to sign Cancellations Instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code Section 1057.3).

    **d.** If there is no written activity by a Principal for any twelve-month period after the Close of Escrow date set forth above, Company may, at its option, terminate its agency relationship with Principals and cancel this Escrow, returning all documents, monies or other items hold to the respective parties who deposited those documents, monies or other items in the Escrow, less any fees and charges as provided herein. In the event of any cancellation of the Escrow pursuant to this paragraph, Company may return all documents or funds delivered to Company by any lender, less any fees due Company.

    **e.** CANCELLATION COSTS- In the event of cancellation of this Escrow, Principals hereto expressly agree to pay Company a reasonable escrow fee as forth in the Fee Schedule in effect at the time which may, from time to time, be modified as compensation for services performed, together with all costs including any third-party costs. Cancellation costs and fees shall be paid pursuant to Cancellation Instructions. Only upon payment to Company of Company's fees and costs, and third-party charges is Company obligated to disburse funds and documents to the respective Principals and deem this Escrow cancelled, and until such time Company holds a lien upon the right, title, and interest of each of the Principals' escrow documents and funds. If there are insufficient funds, then the Principals who owe such funds shall deposit sufficient funds with the Company to pay any and all fees and costs which they may be responsible for under these instructions.

BUYERS INITIALS \_\_\_\_\_                    SELLERS INITIALS *B.B*

**Exhibit B: Page 32 of 34**

Escrow Technologies Inc.

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

f.   Any fees due the Company shall be taken from funds held in Escrow. **IT IS NOT THE RESPONSIBILITY OR ROLE OF COMPANY TO DETERMINE WHICH PRINCIPAL IS AT FAULT OR CAUSED ESCROW TO CANCEL. ANY DISBUTE OVER WHO IS THE RESPONSIBLE PARTY FOR THE CANCELLATION AND ANY SUBSEQUENT FEES MUST BE DETERMINED OUTSIDE OF ESCROW.**

22. **EXTRAORDINARY CHARGES:** It is understood that the fees agreed to be paid you your services are for ordinary and usual services only, and should there be any extraordinary or unusual services rendered, the undersigned agree to pay reasonable compensation for such extraordinary or unusual services, together with any costs and expenses which may be incurred by Escrow Holder in connection with the same. You are hereby given a lien upon all documents, monies and securities deposited in this escrow until you have been so compensated or reimbursed. It is understood that in the event this escrow is cancelled, you will receive compensation for such services as you have rendered in connection with this escrow.

23. **CLOSING:** If this Escrow is not in a position to close upon the closing date set forth herein, and demand is not made by any principal to cancel, Company is to continue processing to close this Escrow when all the conditions of this Escrow have been complied with. But, if on the closing date, or any date thereafter, written demand is made by any principal to cancel this Escrow, Company is to act in accordance with the paragraph in reference to "CANCELLATION" above.

24. **USURY:** Escrow agent is not to be concerned with any question of usury in any loan involved in the processing of this escrow.

25. **PRACTICE OF LAW:** Escrow Holder is not authorized to practice law or give financial advice.

26. **RESIGNATION:** Company may, at Company's sole option, and without liability to Principals or third parties, give written notice to Principals and resign from this Escrow. Company shall be entitled to all costs and charges incurred by Company prior to resignation. The balance of any funds, property, and or documents shall be returned to the parties who deposited same or forwarded to escrow agents as mutually designated in writing by Principals.

27. **THIRD PARTIES:** Escrow Holder is indemnified by parties against third party claims for fees and expenses by Escrow Holder, but not limited to, attorney fees and costs, where Escrow Holder has acted in good faith and with reasonable care and prudence.

28. **COUNTERPARTS:** Escrow instructions may be executed in counterparts each of which shall be deemed an original regardless of the date of its execution and delivery. All counterparts together shall constitute one and the same documents called for on his part to cause title to be shown as herein set forth, which you are authorized to deliver when you hold or have caused to be applied funds set forth with the time limits as provided. Each party authorized you to pay your escrow charges and recording fee, and further authorized you to pay bonds, assessments, taxes and any liens of record to show title as called for.

29. **COLLECTION OF MONIES: Escrow Technologies Inc.** may collect any other monies due **Escrow Technologies Inc.,** which may be due from parties herein in any other matter involving one or both of these Principals.

30. **DISBURSEMENTS:** Escrow Holder is further authorized to pay bills as submitted into Escrow in accordance with the terms of the Purchase Agreement and any encumbrances of record, including any prepayment penalty. In the event you disburse more money to or for the benefit of any party that they are entitled to receive, said receiving party hereby agrees to reimburse and/or repay to Escrow Holder the amount of overpayment within five (5) days after demand is made on said parties in writing. Interest shall thereafter accrue and be paid to Escrow Holder at the rate of 12% per annum. In case said party refuses or neglects to pay said money and interest to Escrow Holder, and it is necessary to resort to any legal proceedings to collect said money, the defendant agrees to pay all charges, court costs and attorney's fees.

31. **HOLD OPEN/CUSTODIAL ACCOUNTING FEE:** Company may withdraw and pay to itself a $50.00 monthly custodial accounting fee from any Principal's funds held in this Escrow (1) that are not claimed, disbursed, or cashed within sixty (60) days after closing or cancellation, or (2) any time Principals hold this Escrow in suspense for a period of more than sixty (60) days due to a dispute between the Principals or due to Principals' failure to execute a mutual escrow instruction concerning funds disbursement.

32. **STALEDATED CHECK(S):** Escrow Holder may charge a $10.00 per month fee, up to 6 months, for any uncashed, stale dated check(s).

# END OF ESCROW INSTRUCTIONS

Julio A Mendoza

BUYERS INITIALS _____          SELLERS INITIALS _____

**Exhibit B: Page 33 of 34**

**Escrow Technologies Inc.**

Date: **May 29, 2018**
Escrow No.: **18-00174-PF**

Brook Bacon

SIGN & RETURN

SIGN & RETURN

BUYERS INITIALS _____

SELLERS INITIALS

**Exhibit B: Page 34 of 34**

# Escrow Technologies

real information. real time.

9440 Reseda Blvd., Suite 203 • Northridge, CA 91324 • P: 818.718.3020 • F: 818.718.9550

**SELLER'S CLOSING STATEMENT**
Estimated

**File No.:** 18-00174-PF
**Officer/Escrow Officer:** Paul Frondarina

**Printed Date/Time:** 06/15/2018 - 11:48:36AM
Page    1 of 2

**Closing Date:** 07/06/2018
**Disbursement Date:**

**Buyer/Borrower:** Julio A. Mendoza

**Seller:** Brook Bacon
11201 Gerald Ave, Los Angeles ( Granada Hills Area ), CA  91344

**Property:** 11201 Gerald Ave, Los Angeles ( Granada Hills Area ), CA  91344

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | 498,000.00 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Property Tax @ 1,988.66 per 6 month(s) 7/01/2018 to 7/06/2018 | 55.24 | |
| **COMMISSION(S):** | | |
| Listing Broker: BrokerInTrust Jim Cavanaugh | 12,450.00 | |
| Selling Broker: Pinnacle Estate Properties Inc. | 12,450.00 | |
| **TITLE CHARGES** | | |
| Owners Premium for 498,000.00: Equity Title Company | 1,591.00 | |
| Subescrow fee: Equity Title Company | 100.00 | |
| Wire/Express: Equity Title Company | 50.00 | |
| City Transfer Tax: Equity Title Company | 2,241.00 | |
| County Transfer Tax: Equity Title Company | 547.80 | |
| Release & Recording Fee: Equity Title Company | 175.00 | |
| **ESCROW CHARGES TO: Escrow Technologies Inc.** | | |
| Settlement Agent Fee | 1,196.00 | |
| Document Preparation Fee | 175.00 | |
| Demand Fee | 225.00 | |
| Messenger Fee | 95.00 | |
| Wire/Express | 80.00 | |
| **LOAN PAYOFF: Barrett Daffin Frappier Treder & Weiss, LLP FOR Di Tech** | | |
| Good to 7/6/2018 | 246,979.33 | |
| Escrow/Impounds Balance | 10,709.76 | |
| Interest  Due | 29,081.44 | |
| Late Charge | 1,013.80 | |
| Other Debit Charge | 186.00 | |
| Corp Advance Fee | 600.00 | |
| Attorney Fee | 804.51 | |
| Suspense | -1,590.67 | |
| Total Loan Payoff | 287,784.17 | |
| **LOAN PAYOFF: Bank Of America** | | |
| Principal Balance | 66,206.07 | |
| Interest as of 6/01/2018 | 8,381.28 | |
| Late Charge | 107.59 | |
| Uncollected Fees Dues | 2,484.44 | |
| Interest from 6/1/2018 thru 6/22/2018 | 252.35 | |
| Interest Per Diem From  6/22/2018 To  7/06/2018, 14 Days, @ 12.0168 | 168.24 | |
| Total Loan Payoff | 77,599.97 | |
| **LOAN PAYOFF: Weltman, Weinberg & Reis Co. LPA** | | |
| Discharge of Lien Amount GOOD TO 6/29/18 | 8,195.68 | |
| Total Loan Payoff | 8,195.68 | |
| **ADDITIONAL DISBURSEMENTS:** | | |

**Exhibit C: Page 1 of 2**

# Escrow Technologies

real information. real time.

9440 Reseda Blvd., Suite 203 • Northridge, CA 91324 • P: 818.718.3020 • F: 818.718.9550

**SELLER'S CLOSING STATEMENT**
Estimated

**File No.:**  18-00174-PF

**Printed Date/Time:**  06/15/2018 - 11:48:36AM
Page    2  of 2

**Property:** 11201 Gerald Ave, Los Angeles ( Granada Hills Area ), CA  91344

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| Natural Hazard Report Fee: Disclosure Source | 99.00 | |
| Pest Inspection-: Wold Termite | 90.00 | |
| Reimbursement for LA City Report: Jim Cavanaugh | 70.85 | |
| Water Cert: Dept. of Water & Power | 15.00 | |
| Retrofit Invoice- Estimate: To Be Determined | 600.00 | |
| Escrow Buffer: Escrow Technologies | 400.00 | |
| T.C. Fee: Seminal Media LLC | 300.00 | |
| Notary Fee: Paula Gomez | 15.00 | |
| Attorney Fee: Donahoe & Young | 8,832.50 | |
| SUBTOTALS | 415,433.21 | 498,000.00 |
| DUE TO SELLER | 82,566.79 | |
| TOTALS | 498,000.00 | 498,000.00 |

Brook Bacon

THIS IS AN ESTIMATED CLOSING STATEMENT FIGURES ARE SUBJECT TO CHANGE

**Exhibit C: Page 2 of 2**

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Donald Brook Bacon** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Employment status** | ■ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| | **Occupation** | Set Finisher | |
| | **Employer's name** | IATSE Local 44 | |
| | **Employer's address** | 12021 Riverside Dr<br>Valley Village, CA 91607 | |
| | **How long employed there?** | 1992 | |

### Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $        7,910.21 | $        N/A |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$        0.00 | +$        N/A |
| 4. | **Calculate gross Income.** Add line 2 + line 3. | 4. | $        7,910.21 | $        N/A |

# Exhibit D: Page 1 of 4

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| Debtor 1 | **Donald Brook Bacon** | | Case number (*if known*) | |

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| **Copy line 4 here** | | 4. | $ 7,910.21 | $ N/A |

5. **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 2,285.70 | $ N/A |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ N/A |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ N/A |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ N/A |
| 5e. | **Insurance** | 5e. | $ 0.00 | $ N/A |
| 5f. | **Domestic support obligations** | 5f. | $ 0.00 | $ N/A |
| 5g. | **Union dues** | 5g. | $ 70.00 | $ N/A |
| 5h. | **Other deductions.** Specify: | 5h.+ | $ 0.00 +| $ N/A |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.    $ 2,355.70    $ N/A

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7.    $ 5,554.51    $ N/A

8. **List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ N/A |
| 8b. | **Interest and dividends** | 8b. | $ 0.00 | $ N/A |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | $ N/A |
| 8e. | **Social Security** | 8e. | $ 0.00 | $ N/A |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | $ N/A |
| 8h. | **Other monthly income.** Specify: | 8h.+ | $ 0.00 +| $ N/A |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.    $ 0.00    $ N/A

10. **Calculate monthly income.** Add line 7 + line 9.    10.    $ 5,554.51 + $ N/A = $ 5,554.51
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:    11. +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies    12.    $ 5,554.51
**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

☑ No.
☐ Yes. Explain:

Official Form 106I    Schedule I: Your Income

**Exhibit D: Page 2 of 4**

page 2

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Donald Brook Bacon** |
| Debtor 2<br>(Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number<br>(If known) | |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

Official Form 106J

## Schedule J: Your Expenses
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Your Household**

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   ■ No

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents names.

   ☐ Yes. Fill out this information for each dependent..............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No<br>☐ Yes |
| _____ | _____ | ☐ No<br>☐ Yes |
| _____ | _____ | ☐ No<br>☐ Yes |
| _____ | _____ | ☐ No<br>☐ Yes |
| _____ | _____ | ☐ No<br>☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   ■ No   ☐ Yes

**Part 2:    Estimate Your Ongoing Monthly Expenses**

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|

4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.
   4. $                            2,145.66

   **If not included in line 4:**

   4a.  Real estate taxes                                                   4a. $                            0.00
   4b.  Property, homeowner's, or renter's insurance                        4b. $                          145.00
   4c.  Home maintenance, repair, and upkeep expenses                       4c. $                            0.00
   4d.  Homeowner's association or condominium dues                         4d. $                            0.00

5. **Additional mortgage payments for your residence,** such as home equity loans   5. $                          727.72

**Exhibit D: Page 3 of 4**

Debtor 1   **Donald Brook Bacon**                                      Case number (if known) _____

| | | | | |
|---|---|---|---|---:|
| 6. | **Utilities:** | | | |
| | 6a. | Electricity, heat, natural gas | 6a. $ | **200.00** |
| | 6b. | Water, sewer, garbage collection | 6b. $ | **45.00** |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | **170.00** |
| | 6d. | Other. Specify: | 6d. $ | **0.00** |
| 7. | **Food and housekeeping supplies** | | 7. $ | **440.00** |
| 8. | **Childcare and children's education costs** | | 8. $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | **80.00** |
| 10. | **Personal care products and services** | | 10. $ | **50.00** |
| 11. | **Medical and dental expenses** | | 11. $ | **54.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | | 12. $ | **266.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | **15.00** |
| 14. | **Charitable contributions and religious donations** | | 14. $ | **0.00** |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. $ | **0.00** |
| | 15b. | Health insurance | 15b. $ | **0.00** |
| | 15c. | Vehicle insurance | 15c. $ | **162.33** |
| | 15d. | Other insurance. Specify: | 15d. $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | | 16. $ | **0.00** |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | **0.00** |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | **0.00** |
| | 17c. | Other. Specify: | 17c. $ | **0.00** |
| | 17d. | Other. Specify: | 17d. $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | | 18. $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | | 19. $ | **0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. | Mortgages on other property | 20a. $ | **0.00** |
| | 20b. | Real estate taxes | 20b. $ | **0.00** |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | **0.00** |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | **0.00** |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | **0.00** |
| 21. | **Other:** Specify: | | 21. +$ | **0.00** |

| | | | |
|---|---|---|---:|
| 22. | **Calculate your monthly expenses** | | |
| | 22a. Add lines 4 through 21. | $ | **4,500.71** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | **4,500.71** |
| 23. | **Calculate your monthly net income.** | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | **5,554.51** |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | **4,500.71** |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. $ | **1,053.80** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.
☐ Yes.   Explain here: _____

# Exhibit D: Page 4 of 4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

 25152 Springfield Court, Suite 345, Valencia, California 91355

A true and correct copy of the foregoing document entitled: **DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY UNDER LBR 3015-1 (p)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | Kristy Ballew | /s/ Kristy Ballew |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ECF):

- Marlene Brookman    marlene.brookman@bankofamerica.com
- Raymond Cruz    Rcruz@cavps.com
- Tiffany N Darden    tiffany.darden@bankofamerica.com
- Essa Gye    essa.gye@bankofamerica.com
- Belinda Mcqueen    belinda.mcqueen@bankofamerica.com
- Christina J O    christinao@mclaw.org, CACD_ECF@mclaw.org
- Robert T Phifer    robert.phifer@bankofamerica.com, walter.thompson@bankofamerica.com
- Elizabeth (SV) F Rojas (TR)    cacb_ecf_sv@ch13wla.com
- Valerie Smith    claims@recoverycorp.com
- Melody A Snow    melody.snow@bankofamerica.com
- Luis A Solorzano    ls@gobklaw.com, go@ecf.inforuptcy.com
- Edward A Treder    cdcaecf@bdfgroup.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Darlene C Vigil    cdcaecf@bdfgroup.com
- Mark T Young    myoung@donahoeyoung.com


2. SERVED BY UNITED STATES MAIL:


Bank of America, N.A.
THE BANK OF NEW YORK MELLON
FKA THE BANK
PO BOX 31785
TAMPA. FL 33631-3785

Bank of America
4909 Savarese Circle
Tampa, FL 33634

Bank of America
16001 N. Dallas Pkwy.
Addison, TX 75001


Bank of America NA
Correspondence Unit CA6-919-02-41
PO Box 5170
Simi Valley, CA 93062-5170

Barrett Daffin etc.
4004 Belt Line Rd.
Suite 100
Addison, TX 75001-4320

Discover Bank
c/o Gordon & Wong Law Group
1485 Treat Blvd., Suite 102
Walnut Creek, CA 94597


Ditech
PO Box 6172
Rapid City, SD 57709-6172

Ditech
PO Box 7169
Pasadena, CA 91109-7169

Ditech Financial LLC
PO Box 6172
Rapid City, SD 57709-6172


Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Los Angeles Co Treasurer Tax Coll
PO Box 54018
Los Angeles, CA 90054-0018


Los Angeles Co Treasurer Tax Coll
225 N. Hill Street, First Floor
Los Angeles, CA 90012-3232

Trustee Corps
17100 Gilette Ave.
Irvine, CA 92614

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

25152 Springfield Court, Valencia California 91355

A true and correct copy of the foregoing document entitled: **NOTICE OF OPPORTUNITY TO REQUEST A HEARING ON MOTION [LBR 9013-1(o)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/18/2018 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 06/18/2018 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 06/18/2018 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Honorable Martin R. Barash
United States Bankruptcy Judge

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/18/2018 | Kristy Ballew | /s/ Kristy Ballew |
| *Date* | *Printed Name* | *Signature* |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ECF):

- Marlene Brookman    marlene.brookman@bankofamerica.com
- Raymond Cruz    Rcruz@cavps.com
- Tiffany N Darden    tiffany.darden@bankofamerica.com
- Essa Gye    essa.gye@bankofamerica.com
- Belinda Mcqueen    belinda.mcqueen@bankofamerica.com
- Christina J O    christinao@mclaw.org, CACD_ECF@mclaw.org
- Robert T Phifer    robert.phifer@bankofamerica.com, walter.thompson@bankofamerica.com
- Elizabeth (SV) F Rojas (TR)    cacb_ecf_sv@ch13wla.com
- Valerie Smith    claims@recoverycorp.com
- Melody A Snow    melody.snow@bankofamerica.com
- Luis A Solorzano    ls@gobklaw.com, go@ecf.inforuptcy.com
- Edward A Treder    cdcaecf@bdfgroup.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Darlene C Vigil    cdcaecf@bdfgroup.com
- Mark T Young    myoung@donahoeyoung.com

2. SERVED BY UNITED STATES MAIL:

Bank of America, N.A.
THE BANK OF NEW YORK MELLON
FKA THE BANK
PO BOX 31785
TAMPA. FL 33631-3785

Bank of America
4909 Savarese Circle
Tampa, FL 33634

Bank of America
16001 N. Dallas Pkwy.
Addison, TX 75001

Bank of America NA
Correspondence Unit CA6-919-02-41
PO Box 5170
Simi Valley, CA 93062-5170

Barrett Daffin etc.
4004 Belt Line Rd.
Suite 100
Addison, TX 75001-4320

Discover Bank
c/o Gordon & Wong Law Group
1485 Treat Blvd., Suite 102
Walnut Creek, CA 94597

Ditech
PO Box 6172
Rapid City, SD 57709-6172

Ditech
PO Box 7169
Pasadena, CA 91109-7169

Ditech Financial LLC
PO Box 6172
Rapid City, SD 57709-6172

Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Los Angeles Co Treasurer Tax Coll
PO Box 54018
Los Angeles, CA 90054-0018

Los Angeles Co Treasurer Tax Coll
225 N. Hill Street, First Floor
Los Angeles, CA 90012-3232

Trustee Corps
17100 Gilette Ave.
Irvine, CA 92614